894 P.2d 1026

**Pita GOMEZ, Worker–Appellant,**

**v.**

**NIELSON'S CORPORATION, and CNA Insurance Companies, Employer/Insurer–Appellee.**

**No. 15701.**

Court of Appeals of New Mexico.

April 18, 1995.

Victor A. Titus, Titus & Murphy, Farmington, for worker-appellant.

A. Brent Bailey, John H. Sinclair, Jr., Hatch, Allen & Shephard, P.A., Albuquerque, for employer/insurer-appellee.

## OPINION

WECHSLER, Judge.

■ Worker appeals from the order of the Workers' Compensation Judge (WCJ) determining that Employer and its Insurer (Insurer), through their agent Crawford & Company, Health and Rehabilitation (Crawford), may have ex parte contact with Worker's physicians outside the presence of Worker's counsel. The order indicates that the constraints, limitations, and prohibitions set out in *Church's Fried Chicken No. 1040 v. Hanson*, 114 N.M. 730, 845 P.2d 824 (Ct.App. 1992), *cert. denied*, 114 N.M. 577, 844 P.2d 827 (1993), do not apply. We reverse.

### Facts

Worker injured her neck, shoulder, and left wrist in an accident that occurred on March 13, 1992. By the time of the formal hearing on the claim, Worker had not yet reached maximum medical improvement with respect to the injury to her wrist. As a result, the WCJ awarded Worker temporary total disability benefits (the compensation order) until further order of the Workers' Compensation Administration (Administration). Employer appealed the compensation order to this Court. The order was affirmed in an unpublished opinion. *Gomez v. Nielson's Corp.*, No. 15,300 (N.M.Ct.App. Feb. 28, 1994).

About four months after the compensation order was filed, Insurer filed a motion to enforce medical management. The motion alleged, in essence, that Insurer had contracted with Crawford for medical case management of Worker's case; that Crawford had assigned the matter to its employment consultants; and that Worker's attorney refused to allow the consultants to meet with Worker or Worker's treating physician, except in the presence of Worker's attorney. Worker admitted Insurer's factual allegations but argued that she was only required to cooperate with the case management system conducted by the Administration through an independent contractor and that there was no valid reason for Crawford's consultants to contact Worker directly. In addition, Worker contended that Crawford's consultants were not entitled to discuss the case with Worker or Worker's treating physician, except in the presence of Worker's attorney. We note in passing that while the motion was pending, Insurer and Worker agreed to an independent medical examination (IME) in order to obtain a second opinion concerning possible surgery for Worker's wrist and an evaluation of her status.

On July 5, 1994, the WCJ entered an order (the ex parte contact order) resolving the motion. The ex parte contact order did not contain specific findings of fact and conclusions of law, even though both parties submitted requested findings and conclusions. Instead, it stated that:

> Neilson's [sic] Corporation and CNA Insurance, through their agent Crawford & Company, may have ex parte contact with physicians outside the presence of Worker's counsel, and that the health care provider would not be subject to the constraints, limitations or prohibitions set out in *Church's Fried Chicken v. Hanson* [.] [Citation omitted.]

This appeal followed.

### Finality of the Order

■ Worker contends that the ex parte contact order is final and appealable because the issue concerning ex parte contacts was the only issue pending before the WCJ and was fully resolved in the order. Employer

contends that the ex parte contact order is not final and appealable because: (1) the compensation order contemplates further proceedings; and (2) the ex parte contact order is interrelated with a determination of the merits of the underlying compensation claim. *See Kellewood v. BHP Minerals Int'l,* 116 N.M. 678, 866 P.2d 406 (Ct.App.1993) (order in change-of-health-care-provider proceeding is not a final, appealable order when a claim for benefits is pending before the Administration). For the reasons discussed below, we hold that the ex parte contact order is final for purposes of appeal.

By statute, a party is entitled to appeal to this Court only a "final order" of the WCJ. NMSA 1978, § 52-5-8(A) (Repl.Pamp.1991). Our Supreme Court has indicated that "the term 'finality' is to be given a practical, rather than a technical, construction." *Kelly Inn No. 102, Inc. v. Kapnison,* 113 N.M. 231, 236, 824 P.2d 1033, 1038 (1992). In addition, we are mindful of the fact that there is no provision for the taking of interlocutory appeals from the orders of the WCJ. *See Sanchez v. Bradbury & Stamm Constr.,* 109 N.M. 47, 48–49, 781 P.2d 319, 320–21 (Ct. App.), *cert. denied,* 109 N.M. 54, 781 P.2d 782 (1989).

In *City of Albuquerque v. Sanchez,* 113 N.M. 721, 724–25, 832 P.2d 412, 415–16 (Ct. App.1992), this Court held that an order denying an employer's request to change health care providers is a final, appealable order when there is no claim for benefits pending before the Administration. Under the circumstances in that case, the change-of-health-care-provider proceeding was the only matter pending in the Administration and was fully resolved by the order. *Id.* at 724, 832 P.2d at 415. There, we considered the fact that the parties would never have been able to obtain review of the order had it not been deemed to be final. *Id.* Later, in *Kellewood,* this Court held that an order resolving a change-of-health-care-provider proceeding is not final and appealable when a claim for benefits is pending before the Administration. *Id.* at 679–81, 866 P.2d at 407–09. In so holding, we indicated that what remained to be decided by the Administration was whether the worker's injuries were causally related to the employment and thus whether the worker was entitled to compensation, including medical benefits. *Id.* at 680, 866 P.2d at 408; *see also Alcala v. St. Francis Gardens,* 116 N.M. 510, 512, 864 P.2d 326, 328 (Ct.App.1993) (order awarding attorney fees in change-of-health-care-provider proceeding was not a final, appealable order because claim for benefits was still pending and entitlement to fees had not yet been proven).

In this case, as in *City of Albuquerque,* there was no compensation proceeding pending at the time that Insurer filed its motion. *See Church's Fried Chicken,* 114 N.M. at 733, 845 P.2d at 827 (a claim is pending when it is actually filed and in the process of litigation, and the fact that an order is subject to later modification does not, without more, make a case pending). As in *City of Albuquerque,* it is possible that there will be no further formal proceedings in this matter because the remaining issues may be settled between the parties or resolved in mediation. Moreover, unlike the situation in *Kellewood* and *Alcala,* the issues of causation and entitlement to some benefits have already been determined. We also note that this is the type of order appropriate for a prompt appeal because any harm flowing from an erroneous ruling cannot be easily corrected later. Finally, Worker may never be able to appeal the ex parte contact order if it is not a final order for purposes of appeal. Accordingly, we hold that the ex parte contact order is a final order within the meaning of the statute.

*Ex Parte Contacts of Insurer's Case Manager*

We turn now to the issue of whether an insurer's agent, retained to perform medical case management as defined in NMSA 1978, Section 52-4-3 (Repl.Pamp.1991) (effective April 1, 1991), is entitled to ex parte contacts with a worker's treating physician over the objection of the worker's attorney.

■ A discovery order is reviewed on appeal only for an abuse of discretion. *See Church's Fried Chicken,* 114 N.M. at 733, 845 P.2d at 827. However, when the order is based on an erroneous interpretation of the law, this Court will hold that the discretion

was not properly exercised. *See LaBalbo v. Hymes*, 115 N.M. 314, 318, 850 P.2d 1017, 1021 (Ct.App.) (trial court abuses its discretion when it applies incorrect substantive law), *cert. denied*, 115 N.M. 359, 851 P.2d 481 (1993).

In *Church's Fried Chicken*, this Court affirmed an order of the district court prohibiting a compensation insurer from engaging in ex parte contacts with a worker's treating physician. *Id.* at 733–35, 845 P.2d at 827–29. Our decision in that case was based on *Smith v. Ashby*, 106 N.M. 358, 743 P.2d 114 (1987). In *Smith*, our Supreme Court recognized the strong public policy favoring the confidentiality of the physician-patient relationship and the threat posed to that relationship by ex parte contacts between the patient's adversary and the patient's treating physician. *Id.* at 359–60, 743 P.2d at 115–16.

Insurer attempts to distinguish *Church's Fried Chicken* by pointing out that Crawford was not a party to the proceedings leading to the compensation order. Additionally, Insurer states that Crawford has no financial interest in Worker's claim or its outcome. On this basis, Insurer argues that Crawford and its employees are not Worker's adversaries, and, therefore, the strong policy concerns articulated in *Smith* do not apply. We are not persuaded.

It was uncontested below that Crawford was retained by and paid by Insurer. Moreover, the ex parte contact order refers to Crawford as an agent for Insurer. By definition, "[a]n agent is one authorized by another to act on his behalf and under his control." *Hansler v. Bass*, 106 N.M. 382, 387, 743 P.2d 1031, 1036 (Ct.App.), *cert. denied*, 106 N.M. 375, 743 P.2d 634 (1987). As an agent of Insurer, Crawford has a duty to disclose to Insurer any fact that might affect Insurer's interests. *Jackson Nat'l Life Ins. Co. v. Receconi*, 113 N.M. 403, 418, 827 P.2d 118, 133 (1992). *Church's Fried Chicken* clearly established that insurers may not engage in ex parte contacts with a worker's treating physician. *Id.* at 733–35, 845 P.2d at 827–29. We decline to hold that the proscribed conduct becomes permissible if it is delegated to an agent. *Cf. Smith v. Walcott*, 85 N.M. 351, 356, 512 P.2d 679, 684 (1973)

(" '[A]n agency may be created for the performance of any lawful act....' " (quoting *Coldwater Cattle Co. v. Portales Valley Project, Inc.*, 78 N.M. 41, 45, 428 P.2d 15, 19 (1967))). Policy prohibits one from doing indirectly what one cannot do directly. *See State v. Aragon*, 109 N.M. 197, 201, 784 P.2d 16, 20 (1989) (referring to the use of racially discriminatory peremptory challenges); *Apodaca v. Hernandez*, 61 N.M. 449, 454, 302 P.2d 177, 180 (1956) (referring to requisition of property). For purposes of communications with treating physicians, Crawford is in the same position as Insurer. Thus, under *Church's Fried Chicken*, Crawford may not engage in ex parte contacts with Worker's treating physician.

■ Next, Insurer argues that the statutes and the regulations of the Administration concerning medical case management indicate that employer-based programs of medical case management are entitled to the same responsibilities, latitude, and duties as the program run by the Administration. As Insurer reasons, because the Administration's medical case management contractor has the authority to contact workers and their physicians and receive their cooperation, employer-based case managers are afforded the same power. We disagree.

The Workers' Compensation Act, NMSA 1978, Sections 52–1–1 to –70 (Repl. Pamp.1991 & Cum Supp.1994), established the basic parameters of independent case management. In particular, the Director of the Administration is required to contract with an independent organization to assist in the establishment of a system of medical case management. Section 52–4–3(A) and (C). An employer is not precluded from establishing its own case management program. Section 52–4–3(D).

The Administration has adopted regulations governing medical case management. N.M. Workers' Compensation Admin.Regs. (WCA) 93.8.5(B)(2) (1993). These regulations provide that "[t]he Administration shall consider the presence or absence of an employer-based case management system" in selecting cases for case management by the Administration and its independent contractor. WCA 93.8.5(B)(2)(a). The regulations

specifically require the worker and the worker's legal representative to cooperate with the organization (Contractor) chosen by the Administration to provide case management, WCA 93.8.3(C), 93.8.5(B)(2)(c), and create a mechanism to resolve disputes concerning the reasonableness of any request for information by the Contractor. WCA 93.8.5(B)(2)(d). In addition, if a worker refuses to cooperate with the Contractor, the regulations provide that the refusal can be considered by a WCJ in connection with "the issues of reasonableness and necessity of medical charges or reasonableness, necessity, or appropriateness of medical treatment." WCA 93.8.5(B)(2)(e).

We agree that the regulations recognize the existence of employer-based case management systems. However, we discern nothing in the statute or the regulations that indicates that such systems are entitled to the same treatment accorded the system run by the Administration and its Contractor. On the contrary, we view Section 52–4–3(D) as expressing a preference for the Administration's system over employer-based systems, at least in some situations. For example, Section 52–4–3(D) explicitly states that disputes involving choice of health care provider shall be resolved by using only the case management program provided by the Administration. Moreover, the regulations concerning case management apply only to case management activities undertaken by the independent organization that is under contract to the Administration, and not activities of employer case management teams. WCA 93.8.3(C). Accordingly, we do not believe that the statute or the regulations provide a basis for an employer-based case manager to be exempt from the teachings of *Church's Fried Chicken*.

Insurer also contends that prohibiting Crawford's medical case manager from having direct contact with Worker's treating physicians, except in the presence of Worker's attorney, undercuts the policy objective of assuring "the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to the employers." NMSA 1978, § 52–5–1 (Repl.Pamp.1991) (effective January 1, 1991).

Insurer points out that formal discovery is available only when a case is in formal litigation, and even then an insurer may not be able to depose each and every doctor who provided medical treatment to a worker. It argues that giving Worker the ability to prohibit ex parte contacts with her treating physicians, in effect, allows Worker to veto the requests for information and prevents Insurer from obtaining the information necessary to determine such vital issues as the date Worker reaches maximum medical improvement, the extent of any physical impairment, or the existence of restrictions on her work.

We think Insurer is overstating the difficulties of its position. Worker has already executed a release of information authorizing Insurer to obtain a wide variety of documents related to the care and treatment of her work-related injury. This type of release is required to be filed along with the claim for compensation. WCA 93.2.1(C)(5). Thus, Insurer may request and receive copies of the treating physician's records, including office notes reflecting Worker's visits to the physician, the physician's assessment of her progress, the treatment prescribed, and the bills related to office visits and treatment. As this case illustrates, Insurer may and did obtain a second opinion and evaluation by the simple expedient of filing a request for an IME. NMSA 1978, § 52–1–51(A) (Repl.Pamp.1991) (effective January 1, 1991). The regulations of the Administration also require that medical records and other relevant evidence be promptly made available to the other party. WCA 93.2.4(C). Additionally, as Worker points out, Insurer may still have informal meetings with Worker's treating physician, so long as the meetings are agreed to in advance and Worker's attorney has an opportunity to attend.

Finally, Insurer contends that our holding today will, in effect, permit Worker to determine the length of time that she receives temporary total disability payments. We do not believe such is the case. This Court may take judicial notice of its own records. *State v. Ibarra*, 116 N.M. 486, 487, 864 P.2d 302, 303 (Ct.App.1993), *cert. quashed*, 117 N.M. 744, 877 P.2d 44 (1994), *and cert. denied*, —— U.S. ——, 115 S.Ct. 1116, 130 L.Ed.2d 1080

(1995). We are well aware that the point in time at which a worker reaches maximum medical improvement is frequently litigated before the Administration, and that the Administration commonly allows insurers credit against future payment of benefits for any overpayment of temporary total disability benefits. *See, e.g., Easterling v. Woodward Lumber Co.*, 112 N.M. 32, 37, 810 P.2d 1252, 1257 (Ct.App.1991). Therefore, we do not believe that our holding will prevent insurers from protecting their legitimate interests in assuring that workers receive temporary total disability payments only so long as they are entitled to them.

*Conclusion*

In summary, when an insurer contracts with a private organization for medical case management services, that private organization and its employees are subject to the same constraints as the insurer itself with respect to ex parte communications with a worker's treating physician. As a result, such private organizations may not engage in ex parte contacts with a worker's treating physician, but must instead secure the permission or presence of the worker or worker's legal representative before discussing matters with the treating physician. We reverse the order of the WCJ allowing such ex parte communications and remand this matter to the Administration for entry of an order in accordance with this opinion. Worker is entitled to an award of attorney fees in the amount of $2500.

**IT IS SO ORDERED.**

DONNELLY and BLACK, JJ., concur.