1999-NMCA-007

971 P.2d 1284

**Samuel GUTIERREZ, Worker–Appellant,**

v.

**J & B MOBILE HOMES and New Mexico Mutual Casualty Company, Employer/Insurer–Appellees.**

Nos. 18,906, 18,920.

Court of Appeals of New Mexico.

Dec. 1, 1998.

Royce E. Hoskins, Trenchard & Bucking-ham, L.L.P., Roswell, NM, for Appellant.

Robin A. Goble, Alice Tomlinson Lorenz, Miller, Stratvert & Torgerson, P.A., Albuquerque, NM, for Appellees.

## OPINION

DONNELLY, J.

{1} Samuel Gutierrez (Worker) appeals from an order of the Workers' Compensation Judge (the WCJ) denying his request for an independent medical examination (IME), pursuant to NMSA 1978, § 52–1–51(A) (1990) of the Workers' Compensation Act. The single issue raised on appeal is whether the WCJ erred in finding that Worker had failed to establish that he was entitled to an IME because a bona fide dispute existed among Worker's authorized health care providers concerning a medical issue related to Worker's care and treatment. Reversed and remanded.

## FACTS

{2} Worker suffered a work-related injury on September 7, 1994, while employed as a truck driver and general maintenance worker for J & B Mobile Homes in Carlsbad, New Mexico. On August 8, 1996, Worker, Employer, and Employer's insurance carrier (Defendants) entered into a stipulated compensation order wherein the parties agreed that Worker had reached maximum medical improvement on March 9, 1996, and that he had sustained a 19% permanent partial impairment of his body as a whole. The order provided, among other things, that "[p]ursuant to the modifications calculated pursuant to §[§ ] 52–1–26.1 through 52–1–26.4 N.M.S.A., 1978, worker is entitled to permanent partial disability with applicable statutory modifiers in the amount of 28% as of May 8, 1996." The parties further agreed that "Dr. Henry Sloan or his direct referral shall provide continued medical care" to Worker.

{3} Worker's disability involved injuries to his neck, lower back, and right shoulder. During the course of treatment of Worker's neck and back injuries, Dr. Sloan referred Worker to Dr. Dana Verch, an orthopedic specialist, for treatment of complaints involving Worker's right shoulder. Dr. Verch subsequently performed surgery on Worker's shoulder and provided follow-up medical care for involving treatment for this aspect of Worker's disability.

{4} On March 11, 1997, Worker returned to Dr. Verch with new complaints. He stated that he was experiencing increasing pain in his right shoulder, and pain that radiated down to his elbow, forearm, and to the back of his right hand and fingers. Dr. Verch referred Worker to Dr. Snehalatha Kankanala, a neurologist, and requested that he conduct an electromyography (EMG) test. Dr.

Kankanala performed the test on May 5, 1997, and concluded that the EMG findings were suggestive of problems with Worker's cervical spine. A month later, on June 19, 1997, Dr. Verch prepared a report noting, in part, that following the shoulder operation:

FOLLOWUP: [Worker] returns with a positive EMG for right C7 radiculopathy. We are going to go ahead and refer him to Dr. Gutierrez in Roswell. I had to speak with Dr. Sloan who is his primary physician out of Roswell. He is a physiatrist[, a physician who specializes in the diagnosis, treatment, and prevention of disease,] and there was some question about referral because he wants to treat him locally; however, I think he has agreed. We will make sure to check up on this. [Worker] is supposed to see Dr. Sloan tomorrow.

Thereafter, Dr. Verch referred Worker to Dr. Mario Gutierrez, a neurosurgeon, for an evaluation in order to determine whether Worker was a candidate for further surgery. Defendants contested this referral, prompting Worker to petition for an IME pursuant to Section 52-1-51. Following a hearing on September 11, 1997, the WCJ adopted findings of fact and conclusions of law, and entered an order denying Worker's request for an IME.

*DISCUSSION*

{5} Worker argues that the WCJ failed to comply with the provisions of Section 52-1-51(A) and erred in finding that a dispute did not exist among Worker's authorized health care providers regarding whether Worker should be granted an IME by a neurosurgeon. More specifically, Worker asserts that the record clearly evidences the existence of a disagreement between Drs. Sloan and Verch concerning the necessity for obtaining an IME to ascertain whether Worker is a candidate for further surgery. Underscoring this argument, Worker contends that the record is devoid of any evidence to support a finding that Worker had failed to establish the existence of a dispute between his authorized medical providers.

{6} In reviewing these contentions, we turn first to an examination of the statute in question. Section 52-1-51(A) provides in pertinent part:

In the event of a dispute concerning any medical issue, if the parties cannot agree upon the use of a specific independent medical examiner, either party may petition a workers' compensation judge for permission to have the worker undergo an independent medical examination. The independent medical examination shall be performed immediately, pursuant to procedures adopted by the director, by a health care provider other than the designated health care provider, unless the employer and the worker otherwise agree.

{7} Interpretation of statutory language is a question of law which an appellate court reviews de novo. *See State v. Adam M.*, 1998–NMCA–014, ¶ 15, 124 N.M. 505, 953 P.2d 40. The Legislature is presumed to have intended that the statute be given a reasonable construction in accord with the plain meaning of the statute. *See Santa Fe S. Ry. v. Baucis Ltd. Liab. Co.*, 1998–NMCA–002, ¶ 7, 124 N.M. 430, 952 P.2d 31. In interpreting the meaning of a statute, a reviewing court endeavors to give effect to the Legislature's intent. *See Cox v. Municipal Boundary Comm'n*, 1998–NMCA–025, ¶ 16, 124 N.M. 709, 954 P.2d 1186. To accomplish this purpose, we examine the wording of the statute and consider the statute's history and background. *See id.*

{8} In addressing this issue, we first look to the meaning of the phrase "dispute concerning [a] medical issue" contained in Section 52–1–51(A). Applying a common sense interpretation to the plain language of the statute, we believe this language encompasses, *inter alia,* any disagreement between a worker's authorized health care providers as to the necessity for conducting a specific test, medical procedure, or course of treatment for the worker.

{9} Here, it is clear that although Dr. Sloan was Worker's primary physician, he referred Worker to Dr. Verch for treatment involving his right shoulder. Dr. Verch performed surgery on Worker's right shoulder and thereafter continued treating him for

postoperative complaints involving this aspect of his work-related disability.

{10} In this case, Worker relied upon the opinion of Dr. Verch to show the existence of a medical dispute. The WCJ declined to consider the opinion of Dr. Verch or his conclusion that Worker should be evaluated by a neurosurgeon to determine if further surgery was necessary in attempting to resolve his shoulder and related problems. Instead, the WCJ found that there was no medical dispute because Dr. Verch was not an authorized health care provider other than for treatment of Worker's right shoulder; hence, an evaluation of Worker for possible surgery fell outside the scope of Dr. Sloan's original referral to Dr. Verch.

{11} At the hearing on Worker's application for an IME, Defendants argued that Worker had been referred to Dr. Verch for treatment of his shoulder problems, not for his neck or spinal complaints. In denying Worker's request for an IME, the WCJ agreed with Defendants' argument and subsequently adopted, among other things, the following findings:

14. There does not exist a dispute among the Worker's authorized treating physicians concerning whether or not Worker is a surgical candidate.

. . . .

18. Dr. Verch's treatment of the Worker is authorized only to the extent of treatment for Worker's right shoulder injury.

{12} The only evidence presented at the hearing on Worker's request for an IME were copies of reports by Drs. Sloan and Verch, and the EMG findings of Dr. Kankanala. *See* Rule 12.6.3, Tit. 11, ch. 4, pt. 2, N.M. Workers' Compensation Administration (1996) (medical records properly identified shall be admitted into evidence unless an objection is preserved). Nothing contained in these documents provides an evidentiary basis for finding that a dispute did not exist between Worker's authorized health care providers concerning the necessity for a further referral to determine whether Worker was a suitable candidate for further surgery. Although counsel for both Worker and Defendants strongly debated whether Dr. Verch's attempted referral of Worker to Dr. Gutierrez was outside the scope of the referral to Dr. Verch for treatment of Worker, no evidence was presented directly bearing on this issue. The arguments of counsel did not provide a proper basis for the WCJ's conclusion that "Dr. Verch is not an authorized physician with respect to any other complaints of the Worker including Worker's radicular complaints involving his neck and right arm."[1] *Cf. Yardman v.. San Juan Downs, Inc.,* 120 N.M. 751, 761, 906 P.2d 742, 752 (Ct.App.1995) (arguments and statements of attorneys are not evidence); *see also* UJI 13–106(6) NMRA 1998.

{13} Once Worker has presented evidence that there is a medical dispute between medical care providers who have been authorized to treat him pursuant to NMSA 1978, § 52–1–49 (1990), and that the health care providers meet the criteria contained in Section 52–1–51(C), he has made a prima facie showing of eligibility for an IME.[2] Here, Dr. Verch's report indicated that Worker was complaining of numbness and tingling in his right arm, and that Worker was not responding to therapy or medications and injections. Dr. Verch concluded that based on the results of the EMG and his examination of Worker, he should be referred to a neurosurgeon to ascertain the need for further surgery.

{14} This evidence satisfied Worker's initial burden of establishing the existence of a

---

1. Indeed, whether Worker's complaints involving pain in his right shoulder, arm, hand and fingers were related to his shoulder injury would appear to present a clear medical issue. Dr. Verch's report indicates that in March 1997 Worker complained of pain in his right shoulder, which went "down to his elbow, forearm and to the back of his hand and fingers."

2. Section 52–1–51(C) restricts the health care providers who may testify or give evidence concerning medical disputes. This subsection provides: "Only a health care provider who has treated the worker pursuant to Section 52–1–49 NMSA 1978 or the health care provider providing the independent medical examination pursuant to this section may offer testimony at any workers' compensation hearing concerning the particular injury in question."

medical dispute within the contemplation of Section 52–1–51(A). Nothing in the record established that the surgical examination requested by Dr. Verch was outside the scope of treatment and follow-up medical care which Dr. Verch was authorized to perform. *See Jurado v. Levi Strauss & Co.,* 120 N.M. 801, 804, 907 P.2d 205, 208 (Ct.App.1995) ("When a medical issue is in dispute, Section 52–1–51(A) provides for resolution through the use of an independent medical examiner.").

{15} Defendants argue that even if Worker has succeeded in establishing that Dr. Verch is an authorized health care provider, nevertheless, Worker has failed to establish that the referral recommended by Dr. Verch is reasonably necessary. Responding to this argument, Worker asserts that the language of Section 52–1–51(A) requires that once a worker or an employer establishes that a dispute exists between two or more of his authorized health care providers concerning a medical issue, and either the worker or the employer petitions for an IME, such examination is required.

{16} In contrast with Worker's reading of the statute, Defendants argue that the language of Section 52–1–51(A) which states that *"either party may petition [the WCJ] for permission to have the worker undergo an [IME]"* (emphasis added), indicates a legislative intent to invest the WCJ with discretion concerning whether the IME is reasonably necessary. We agree.

{17} We conclude that the use of the words "may petition ... for permission" clearly evinces a requirement that the party seeking an order authorizing the conducting of an IME must present evidence to show that the request is reasonably necessary. Any other interpretation would relegate the WCJ to the role of merely a ministerial officer and mandate an automatic approval of an IME, irrespective of any proof of reasonableness or necessity for such examination. For example, under the interpretation urged by Worker, a party could file repetitive petitions requesting an IME, regardless of

whether similar examinations had previously been conducted, or good cause had been shown for the granting of such motion. We decline to read the statute so narrowly. Instead, we conclude that the WCJ is invested with the discretion to determine whether based upon the evidence presented good cause exists for conducting such examination. *Cf. Chavez v. Intel Corp.,* 1998–NMCA–175, ¶ 7, 126 N.M. 335, 968 P.2d 1198 (after the initial and second selection of a health care provider, "any further change in physicians places the burden on the party seeking to change physicians" (emphasis omitted)); *City of Albuquerque v. Sanchez,* 113 N.M. 721, 726, 832 P.2d 412, 417 (Ct.App.1992) (the burden is upon the party who made the initial selection to prove that the care of the health care provider in the second selection will be unreasonable). Whether good cause exists for conducting an IME, is a question of fact. *Cf. DiMatteo v. County of Doña Ana,* 104 N.M. 599, 603, 725 P.2d 575, 579 (Ct.App. 1985) ("Medical treatment for which payment is sought in a compensation case must be shown to be reasonably necessary."). In concluding that the statute requires a showing of good cause, we recognize, however, that the mere fact that a particular test or examination has previously been conducted on Worker does not negate the necessity for further or future examinations, particularly where a prior examination has been carried out months earlier, or there is evidence that Worker's condition may have changed.

{18} Because we find that the WCJ erred in determining that a bona fide medical dispute did not exist between Worker's authorized health care providers, and the WCJ refused to consider the record and opinion of Dr. Verch, we conclude that the cause should be remanded for consideration of Dr. Verch's report and for the adoption of further findings of fact and conclusions of law in light of such evidence. The WCJ may, in his discretion, permit the introduction of additional evidence.

{19} In the event the WCJ determines that an IME should be conducted, the exami-

nation should be promptly carried out by a health care provider selected by the WCJ in accordance with Section 52–1–51(B).[3] *See Jurado,* 120 N.M. at 804–05, 907 P.2d at 208–09 (the statute provides two different methods for selecting a physician to conduct the IME).

*CONCLUSION*

{20}  For the foregoing reasons, the order of the WCJ is reversed and the cause is remanded for further proceedings consistent herewith.

{21}  IT IS SO ORDERED.

BOSSON and WECHSLER, JJ., concur.

---

3.  Section 52–1–51(B) provides:

In deciding who may conduct the independent medical examination, the workers' compensation judge shall not designate the health care provider initially chosen by the petitioner. The workers' compensation judge shall designate a health care provider on the approved list of persons authorized by the committee appointed by the advisory council on workers' compensation to create that list. The decision of the workers' compensation judge shall be final. The employer shall pay for any independent medical examination.