2001-NMCA-036

28 P.3d 1100

Concepcion RAMIREZ, Claimant–
Appellant,

v.

IBP PREPARED FOODS, Self–Insured,
Respondent–Appellee.

Nos. 21,139, 21,734.

Court of Appeals of New Mexico.

March 20, 2001.

Certiorari Denied, No. 26,928,
May 31, 2001.

Gordon Berman, Las Cruces, NM, for Appellant.

William R. Babington, Jr., Michael J. Thomas, Holt & Babington, P.C., Las Cruces, NM, for Appellee.

## OPINION

BOSSON, Chief Judge.

{1} Concepcion Ramirez (Worker) appeals a compensation order denying her coverage for knee replacement surgery. She also ap-

peals an order on a request for discovery that was entered after the compensation order. The two appeals are hereby consolidated. We address only the merits of the first appeal, as the second is made moot by our decision. In her first appeal, Worker raises several issues: (1) whether the Workers' Compensation Judge (WCJ) erred in granting the motion for an independent medical examination (IME); (2) if the IME was improperly ordered, should the doctor's report and testimony have been admitted at trial; (3) if the doctor's report and testimony are stricken, whether there is sufficient evidence to support the decision of the WCJ; and (4) finally, even considering the doctor's report and testimony, whether there is sufficient evidence to support the decision?

## BACKGROUND

{2} Worker began working for IBP Prepared Foods (Employer) as a meat packer in August of 1995. Before she started work, she completed a pre-employment physical examination. That examination did not reveal any problems with her knees. On January 3, 1997, Worker fell down two or three steps at work. She landed on her right shoulder and right knee. Employer provided medical care at the time of the accident. A day later, Worker went to Santa Teresa Immediate Care Clinic (Clinic), where apparently all Employer's workers are treated. The Clinic documented a right shoulder strain and fitted Worker with a sling. The Clinic also documented that the right knee had a contusion and was swollen and strained. X-rays revealed chronic advanced arthritis of the knee for which there had been no prior treatment. The prognosis was "mediocre to poor due to pre-existing disease." The Clinic referred Worker to the El Paso Orthopaedic Surgery Group, where Dr. Boone examined her. Dr. Boone treated Worker's shoulder and then referred her to a colleague, Dr. Alicea, for treatment of her knee.

{3} After his initial examination, Dr. Alicea wrote that "there [was] a good chance [that] she may end up needing a knee replacement in the future. Since I have no documentation of her having any pain in her knees prior to the fall you would have to consider this to be an exacerbation of a preexisting condition." Worker remained off work for about a month after the injury and was on light duty for another three months, after which she returned to her full job duties. During that time, she was treated with a steroid injection and anti-inflammatory medication. By April of 1997, Worker noted that her pain was much better. Dr. Alicea told her to come back if she had any problems.

{4} A year later, in April of 1998, Worker returned to Dr. Alicea because the pain in her right knee had gotten worse. There was no indication that the increased pain was precipitated by any particular event. Dr. Alicea gave Worker another steroid injection, but noted once again that she would probably need a knee replacement.

{5} In May 1998, Worker returned to Dr. Alicea for a follow-up visit. The steroid injection had given Worker relief for only a month and Dr. Alicea was thereby prompted to recommend a total knee replacement. Employer refused the treatment. As a result, Worker filed a complaint for benefits. Employer denied liability. It maintained that the need for the knee replacement was not caused by a work-related injury.

{6} Employer then filed a motion for an IME. In its motion, Employer stated that a dispute had arisen over whether or not Worker had suffered an impairment by reason of the injury arising out of and in the course of employment, and whether the disability was a natural and direct result of the accident. Worker objected to the motion on the basis that there was no medical dispute between authorized health care providers regarding these issues. At the hearing on the motion, Employer argued that an IME could be ordered if there was a medical dispute between the parties, and not just a dispute between two medical providers. The WCJ stated that he had authority to order the IME on his own motion. The WCJ opined that there was confusion regarding whether the need for surgery arose out of the pre-existing condition or an aggravating injury. Therefore, to assist him in determining the issues in the case, the WCJ ordered an IME and selected Dr. Stern to conduct the examination.

{7} Dr. Stern's examination showed degenerative arthritis in Worker's knees. Her condition was asymptomatic before the fall,

but her right knee became symptomatic after the fall. He acknowledged that the right knee was clearly injured in January of 1997. Dr. Stern recommended that Worker not undergo knee replacement because she was too young. Dr. Stern opined that the pain complained of in 1998 was likely unrelated to the fall. He contended that she was in pain now because her knees were worn out. Dr. Stern concluded that as a reasonable medical probability, he did not think that Worker had any permanent consequence from the fall on the stairs in January of 1997 and that Worker's need for knee replacement had very little to do with the fall.

{8} Dr. Alicea had a different opinion. He opined that the inflammation, increased pain, and the need for replacement surgery was caused by the fall, which aggravated Worker's pre-existing condition. The WCJ considered the testimony of both doctors. The WCJ concluded that Worker had failed to prove that her right knee condition was a natural and direct result of the accidental injury and denied her benefits for a knee replacement. Worker's first appeal followed.

{9} Having been denied workers' compensation benefits to pay for a knee replacement, Worker asked her health insurance carrier to authorize and pay for the knee replacement. Worker's health insurance, a self-funded plan created by Employer, informed Worker that the plan would not cover her knee injury. According to a letter Employer sent to the health insurance carrier, the injury was work-related, a position directly contrary to what the Employer argued before the WCJ. Worker requested a copy of the letter, which both Employer and the health insurance administrator refused. Worker filed a motion to compel discovery. Employer opposed the motion. After a hearing on the motion, the WCJ denied the motion on the basis that the first appeal had divested it of jurisdiction and the time period for disclosure had been closed. Worker's second appeal resulted from that decision.

## DISCUSSION

### Independent Medical Examination

{10} The authority of the WCJ to order an IME can be found in NMSA 1978, Section 52-1-51(A) (1990). That statute states, "[i]n the event of a dispute concerning any medical issue, if the parties cannot agree upon the use of a specific independent medical examiner, either party may petition a workers' compensation judge for permission to have the worker undergo an independent medical examination." In this case, we are asked to determine the meaning of the statute with respect to "a dispute concerning any medical issue." *Id.* Interpretation of statutory language is a question of law that this Court reviews de novo. *See Bajart v. Univ. of N.M.*, 1999-NMCA-064, ¶ 7, 127 N.M. 311, 980 P.2d 94. In interpreting the meaning of a statute, we endeavor to give effect to the legislature's intent. *Gutierrez v. J & B Mobile Homes*, 1999-NMCA-007, ¶ 7, 126 N.M. 494, 971 P.2d 1284. In so doing, we examine the wording of the statute and consider the statute's history and background. *Id.*

{11} Section 52-1-51(A) was a complete re-write of the old Workers' Compensation Act with regard to an IME. Before 1991, the employer or insurer had the right to select the health care provider. *See* NMSA 1978, § 52-1-49 (1987). Either the employer or insurer could also compel the worker to be examined by a physician of its choice at six month intervals. *See* § 52-1-51(A)(5) (1989). Permission from the WCJ was not required for these examinations. Further, if a worker did not attend the examination, compensation benefits would be forfeited. *See* § 52-1-51(B) (1989).

{12} Beginning in 1991, the sections concerning selection of a health care provider and the requirement for an IME were completely changed. Workers were allowed a role in the selection of a health care provider. *See* § 52-1-49(B) (1990). The statute allows the party who did not make the first selection to choose a different health care provider after sixty days of treatment, without a showing that the initial provider was not providing reasonable medical care. *See* § 52-1-49(C). Further, the statute sets out the procedure for other changes in the health care provider. *See* § 52-1-49(D) and (E). Contrary to the former statute, either party may petition for an IME in the event of a medical dispute. *See* § 52-1-51(A). In making these revisions, the legislature set forth an orderly process for the treatment and examination of injured workers that gives

both parties the opportunity to control the medical treatment.

{13} In the case before us, Worker's treating physician was Employer's selection; the parties do not dispute that fact. There has never been any change in health care provider from the initial selection. It was Employer's doctor who recommended the knee replacement surgery and who stated that the need for the surgery was caused by the injury at work, an injury which exacerbated Worker's pre-existing osteoarthritis. Employer did not agree with the diagnosis of its own doctor and, therefore, sought an IME. Employer contended that there was a dispute regarding a medical issue.

{14} We have had one previous occasion to examine the meaning of this statute. *See Gutierrez*, 1999–NMCA–007, 126 N.M. 494, 971 P.2d 1284, . In that case, the question was whether there was a dispute among the health care providers regarding treatment of the worker's injury. We stated that a common sense interpretation of the statute encompassed "any disagreement between a worker's authorized health care providers as to the necessity for conducting a specific test, medical procedure, or course of treatment for the worker." *Id.* ¶ 8.

{15} In contrast to the language of *Gutierrez*, there is no dispute here between health care providers; in fact, there is only one health care provider, Dr. Alicea. Further, the dispute between the parties does not concern the necessity for a particular test, procedure, or course of treatment. Rather, the dispute is between the Employer and its selected health care provider regarding whether the disability requiring treatment was a natural and direct cause of the accident. We perceive two problems here.

■ {16} First, there is no dispute between health care providers. Employer argues that all that·is required is a dispute between the parties regarding a medical issue. We do not believe that the legislature intended such a reading of the statute. If that were the case, then anytime an employer or a worker had a dispute with the party's own medical doctor, that party could seek an IME rather than go through the procedure of selecting a different health care provider. That would make the procedure set forth in Section 52–1–49 superfluous. In interpreting a statute, we look to the statute as a whole, construing each section in connection with every other section. *Romero Excavation & Trucking, Inc. v. Bradley Constr., Inc.*, 1996–NMSC–010, ¶ 6, 121 N.M. 471, 913 P.2d 659. We must attempt to achieve internal consistency and avoid making any portion of the statute superfluous. *Cordova v. Taos Ski Valley, Inc.*, 121 N.M. 258, 265, 910 P.2d 334, 341 (Ct.App.1995). The legislature has provided a procedure for when a party does not agree with the choice of a health care provider. That procedure does not include seeking an IME, and we will not interpret the statute in such a manner as to allow the procedure set forth in Section 52–1–49 to be circumvented. We hold that the disputes regarding medical issues must be between health care providers.

■ {17} Second, we do not believe that the dispute here concerns a medical issue that would allow for an IME. The dispute is not with regard to the propriety or course of treatment. The dispute concerns causation. We do not believe that causation is a medical issue as contemplated by the IME statute. Causation involves medical opinion only when the employer denies causation. Then the worker is required to establish the causal connection by expert testimony of a health care provider. *See* NMSA 1978, § 52–1–28(B) (1987). Here, Employer denied causation, but sought the WCJ's assistance in getting its own expert to negate Worker's medical testimony. We do not believe that the legislature intended the IME statute to provide Employer with a medical expert to battle an existing medical provider on the issue of causation. We believe that Employer's interpretation of the statute creates controversy where it would otherwise not exist and leads to expensive and time consuming litigation. This position frustrates the legislature's stated policy that the workers' compensation laws will be interpreted to assure the quick and efficient delivery of indemnity and medical benefits to injured and disabled workers at a reasonable cost to employers, without construction of the Act in favor of either party. *See* NMSA 1978, § 52–5–1 (1990).

■ {18} Employer also argues that the WCJ had inherent authority to order the

IME and this Court should review its decision solely for an abuse of discretion. While we recognize that the WCJ is invested with discretion to determine whether good cause exists for conducting an IME, *see Gutierrez,* 1999–NMCA–007, ¶ 17, 126 N.M. 494, 971 P.2d 1284, we do not agree that this grants the WCJ discretion to order an IME on its own motion. The statute specifically states that either party may petition the WCJ for permission to have the worker undergo an IME. Nowhere in this statute is there a suggestion that the WCJ can determine on its own that there is a medical dispute and order an IME. Rather, a party must petition for permission and present evidence to show that the request is reasonably necessary. Here, the WCJ determined on his own that the medical record was confusing and that an IME would assist him in determining the issues in the case. Medical records that are confusing to the WCJ do not establish good cause for conducting an IME. The WCJ abused his discretion by determining that he could order an IME on his own motion. *See Gomez v. Nielson's Corp.,* 119 N.M. 670, 672–73, 894 P.2d 1026, 1028–29 (Ct.App.1995) (stating that when the order is based on an erroneous interpretation of the law, this Court will hold that the discretion was not properly exercised).

{19} We find that the WCJ erred in ordering that Worker undergo an IME. There was no dispute regarding a medical issue. The WCJ's confusion is not sufficient under the statute to create the authority for ordering an IME.

### Sufficiency of the Evidence

{20} Worker's other issues concern the propriety of using Dr. Stern's testimony at the hearing on the merits and whether there was sufficient evidence to support the WCJ's decision with or without the testimony. Because we have found that the IME should not have been conducted, we conclude that the matter must be remanded to the WCJ for a new hearing on the merits. The testimony of Dr. Stern is not admissible as he was neither the authorized health care provider nor the provider conducting an IME pursuant to Section 52–1–51(C). The WCJ shall reconsider the existing evidence, including Dr. Alicea's report and testimony but without regard for Dr. Stern's report and testimony, and the WCJ shall determine based thereon whether Worker has established that the injury to her knee, which now requires replacement, was caused, to a medical probability, by her fall at work.

### Discovery

{21} We dismiss Worker's second appeal regarding her request for discovery of a letter from Employer to her health insurance carrier purporting to state that her injury was work-related and, thus, not compensable by the health insurance. In light of our reversal and remand for reconsideration of Worker's entitlement to workers' compensation benefits for her knee replacement, the issues raised with regard to the discovery for health insurance purposes are moot.

### CONCLUSION

{22} For the foregoing reasons, the decision of the WCJ ordering an IME is reversed and the case remanded for reconsideration of Worker's entitlement to benefits. Worker's second appeal is dismissed.

{23} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Judge, CELIA FOY CASTILLO, Judge.