**Certiorari Denied, July 25, 2014, No. 34,772**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number:  2014-NMCA-085**

**Filing Date:  May 20, 2014**

**Docket No. 32,955**

**CITY OF EUNICE,**

     **Plaintiff-Appellee,**

**v.**

**STATE OF NEW MEXICO TAXATION
AND REVENUE DEPARTMENT; DEMESIA
PADILLA, SECRETARY OF THE TAXATION
AND REVENUE DEPARTMENT; and THE
STATE OF NEW MEXICO,**

     **Defendants-Appellants.**

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY
Gary L. Clingman, District Judge**

Brownstein Hyatt Farber Schreck, LLP
Timothy R. Van Valen
Albuquerque, NM

for Appellee

Gary K. King, Attorney General
Nelson J. Goodin, Special Assistant Attorney General
Aaron Rodriguez, Special Assistant Attorney General
Santa Fe, NM

for Appellants

**OPINION**

**VANZI, Judge.**

1

**{1}** The State of New Mexico Taxation and Revenue Department and its Secretary (the Department) appeal from the district court's declaratory judgment ruling barring the Department from recovering certain gross receipts taxes that the Department incorrectly paid to the City of Eunice (the City). The mistake arose after a taxpayer, who had originally reported and paid state and city taxes for at least four years, later determined that it was subject to tax in Lea County (the County) rather than the City. The single question we must address is whether a certain provision of the Tax Administration Act (the Act), NMSA 1978, §§ 7-1-1 to -82 (1965, as amended through 2013), permits the Department to recover gross receipts tax revenues that it erroneously transferred and distributed to the City. We affirm.

**BACKGROUND**

**{2}** The parties do not dispute the following facts. The City is an incorporated municipality in Lea County, New Mexico. The State of New Mexico, the City, and the County impose upon taxpayers with a business location in the jurisdiction certain gross receipts taxes pursuant to various statutes including the Gross Receipts and Compensating Taxes Act, NMSA 1978, §§ 7-9-1 to -114 (1966, as amended through 2013); the Municipal Local Option Gross Receipts Taxes Act, NMSA 1978, §§ 7-19D-1 to -18 (1979, as amended through 2013); and the County Local Option Gross Receipts Taxes Act, NMSA 1978, §§ 7-20E-1 to -28 (1993, as amended through 2013).

**{3}** The Department administers the gross receipts taxes imposed by the State, City and County. Thus, for example, pursuant to Section 7-1-6.4, the Department collects and distributes a portion of the revenue from the gross receipts taxes collected by the State from taxpayers with a place of business in the City to the City, subject to certain authorized decreases. The Department also transfers to the City the net receipts, less administrative fees and any decreases, of municipal local option gross receipts tax it collects on behalf of the City that is paid by taxpayers with a place of business in the City.

**{4}** In this case, a taxpayer, who paid gross receipts taxes imposed by the State, County, and City, based upon a business location in the City, determined that it had mistakenly paid municipal local option gross receipts taxes to the City because its place of business was actually in an unincorporated part of the County and not within the City boundaries. The taxpayer filed thirty-six amended returns changing the reporting location from the City to the County, and in January 2013, the Department granted the taxpayer a refund of City taxes paid going back to January 2009. The Department did not refund the taxpayer any State imposed gross receipts tax.

**{5}** Also in January 2013, the Department informed the City that it must repay to the Department various gross receipts taxes that had been transferred to the City pursuant to Section 7-1-6.12(A) and distributed to the City pursuant to 7-1-6.4(A), based upon the original returns that had been filed by the taxpayer. The Department advised the City that the repayment would be achieved by withholding all or part of future distributions or transfers of tax revenues to the City until repaid in full. The amount of repayment that the

Department sought to recover exceeded $2.3 million.

**{6}** The City filed a complaint for declaratory and injunctive relief in the Lea County district court, seeking to prohibit the Department from decreasing current or future gross receipts tax transfers to the City for any portions of the transfers that were made to the City prior to January 2012. The City alleged—and the Department did not contest—that the Department's recovery of tax revenues for over four years would severely impact the City, its operations, and citizens. The City's total general fund budget for fiscal year 2013 was $5,811,542. As of February 22, 2013, the City had approximately $1,937,181 remaining in its general fund for fiscal year 2013. The $2.3 million repayment amount sought by the Department was equivalent to about 40% of the City's total general fund budget for fiscal year 2013 and exceeded the remaining budget for the 2013 fiscal year. Accordingly, the City would have lost about $1,520,000 in anticipated revenue, or about 73% of the remaining budgeted general fund revenue, if it had to pay back the distributions and transfers in full. Further, because repayment would have continued through at least the first two months of the 2014 fiscal year, the City would have suffered an additional loss in excess of $760,000. Such a severe loss of anticipated revenues would have required the City to make drastic cuts to its operations, including laying off roughly half of the City's staff. Even if the Department permitted repayment over a 60-month period, the City would have to make payments of more than $38,630 per month, or about 13% of its monthly general fund operating budget.

**{7}** After a hearing, the district court entered detailed findings and conclusions. The court found that the City would suffer irreparable harm if it was required to forego receipt of its gross receipts tax revenue until the entire amount of the refunded tax payments was paid to the Department. Further, the court held that, pursuant to Section 7-1-6.15(C), the Department only has statutory authority to recover $120,552.72 from the City for "erroneous distributions" of gross receipts tax revenue made in 2012 and that the Department could not decrease current or future transfers of gross receipts tax that were made prior to that calendar year. The district court permanently enjoined the Department from attempting to recover the over $2.3 million it sought for payments back to 2009. This appeal followed.

## DISCUSSION

### Standard of Review

**{8}** Whether the Department can recover taxes previously distributed and transferred to the City mistakenly remitted by a particular taxpayer involves the interpretation and application of the Act, a question of law that we review de novo. *See Hovet v. Allstate Ins. Co.*, 2004-NMSC-010, ¶ 10, 135 N.M. 397, 89 P.3d 69. Tax statutes, like any other statutes, "are to be interpreted in accordance with the legislative intent and in a manner that will not render the statutes' application absurd, unreasonable, or unjust." *Amoco Prod. Co. v. N.M. Taxation & Revenue Dep't*, 1994-NMCA-086, ¶ 8, 118 N.M. 72, 878 P.2d 1021. "In construing a statute, our charge is to determine and give effect to the Legislature's intent. In discerning the Legislature's intent, we are aided by classic canons of statutory construction,

and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135 (alteration, internal quotation marks, and citation omitted). "We will not depart from the plain wording of a statute, unless it is necessary to resolve an ambiguity, correct a mistake or an absurdity that the Legislature could not have intended, or to deal with an irreconcilable conflict among statutory provisions." *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, ¶ 28, 125 N.M. 401, 962 P.2d 1236.

**The Relevant Provisions of the New Mexico Tax Administration Act**

**{9}** Because this case involves a dispute over the application of mainly three sections of the Act, we begin with the statutory provisions at issue. As we have noted, the Act governs the administration and enforcement of most state and local taxes and charges the Department with collection of gross receipts payments from taxpayers for transfer or distribution to the municipalities on a monthly basis. *See* § 7-1-2(A), (D); § 7-19D-7. Relevant to this appeal is the administration of the state and municipal gross receipts taxes, as well as adjustments of transfers and distributions made upon a prior error.

**{10}** With respect to state gross receipts tax, which the City receives, the share to be determined and distributed is set forth in Section 7-1-6.4(A)(1), which provides,

> A.      Except as provided in Subsection B of this section, a distribution pursuant to Section 7-1-6.1 . . . shall be made to each municipality in an amount, subject to any increase or decrease made pursuant to Section 7-1-6.15 . . . , equal to the product of the quotient of one and two hundred twenty-five thousandths percent divided by the tax rate imposed by Section 7-9-4 . . . multiplied by the net receipts for the month attributable to the gross receipts tax from business locations:
> (1) within that municipality[.]

**{11}** In addition, the City has elected to impose various local option gross receipts taxes, including a municipal gross receipts tax as authorized by Section 7-19D-9. The Department collects these local option gross receipts taxes imposed by the City and, pursuant to Section 7-1-6.12, transfers a portion of that revenue as follows:

> A.      A transfer pursuant to Section 7-1-6.1 . . . shall be made to each municipality for which the department is collecting a local option gross receipts tax imposed by that municipality in an amount, subject to any increase or decrease made pursuant to Section 7-1-6.15 . . . equal to the net receipts attributable to the local option gross receipts tax imposed by that municipality, less any deduction for administrative cost determined and made by the department pursuant to the provisions of the act authorizing imposition by that municipality of the local option gross receipts tax and any

additional administrative fee withheld pursuant to Subsection C of Section 7-1-6.41.

**{12}** Finally, Section 7-1-6.15, the provision that is at the center of this case, provides the Department with some authority to adjust distributions and transfers of gross receipts taxes to municipalities based upon a prior error. That section provides:

> A. The provisions of this section apply to:
> (1) any distribution to a municipality of gross receipts taxes pursuant to Section 7-1-6.4 . . . or of interstate telecommunications gross receipts tax pursuant to Section 7-1-6.36 . . . ;
> (2) any transfer to a municipality with respect to any local option gross receipts tax imposed by that municipality;
>
> . . . .
>
> B. *If the secretary determines that any prior distribution or transfer to a political subdivision was erroneous, the secretary shall increase or decrease the next distribution or transfer amount for that political subdivision after the determination, except as provided in Subsection C*, D or E of this section, by the amount necessary to correct the error. Subject to the provisions of Subsection E of this section, the secretary shall notify the political subdivision of the amount of each increase or decrease.
> C. *No* decrease shall be made to current or future distributions or transfers to a political subdivision for any excess distribution or transfer made to that political subdivision *more than one year* prior to the calendar year in which the determination of the secretary was made.
> D. The secretary, in lieu of recovery from the next distribution or transfer amount, may recover an excess distribution or transfer of one hundred dollars ($100) or more to the political subdivision in installments from current and future distributions or transfers to that political subdivision pursuant to an agreement with the officials of the political subdivision whenever the amount of the distribution or transfer decrease for the political subdivision exceeds ten percent of the average distribution or transfer amount for that political subdivision for the twelve months preceding the month in which the secretary's determination is made; provided that for the purposes of this subsection, the "average distribution or transfer amount" shall be the arithmetic mean of the distribution or transfer amounts within the twelve months immediately preceding the month in which the determination is made.

Section 7-1-6.15 (emphasis added).

**The Department Made Prior Erroneous Distributions and Transfers to the City Under**

**the Plain Language of Section 7-1-6.15**

**{13}** The primary issue before us is the meaning of the term "erroneous" in Section 7-1-6.15(B) of the Act and whether that term refers to distributions or transfers of gross receipts tax revenue that were in error due to a taxpayer filing or reporting error by a taxpayer as well as an error by the Department, or whether it refers only to errors made by the Department. The Department also contends that, because the distribution originally made to the City was correct, there is no time limit on its ability to recover the overpayments. There is no case law construing Section 7-1-6.15 and, therefore, our review presents us with a question of first impression.

**{14}** Section 7-1-6.15(C) provides that the Department may not decrease current or future distributions or transfers to the City to recover any excess transfer made more than one year prior to the calendar year in which the Secretary determined that an excess transfer had been made. In our view, the plain language of Section 7-1-6.15 is clear and contains no limitation as to any error. We start with the word "erroneous," which is not defined in the Act. In the absence of a statutory definition, we rely on a dictionary definition to determine the meaning of the language used. Webster's dictionary defines "erroneous" as "[c]ontaining or based on error: MISTAKEN." *Webster's II New College Dictionary* 382 (2001). The meaning is simple and unambiguous—the word "erroneous" describes something or someone as mistaken or incorrect.

**{15}** Here, for at least four years, the taxpayer paid monthly gross receipts taxes to the Department based upon a mistaken assumption that its business location was in the City instead of the County. The Department, in turn, made monthly transfers of those mistakenly paid City gross receipts taxes to the City as required by Section 7-1-6.12 and, on that basis, also made distributions of state gross receipts tax paid by taxpayer to the City as required by Section 7-1-6.4(A). There is no question that the payments made by the taxpayer under Section 7-19D-1, the Municipal Local Option Gross Receipts Taxes Act, was a mistake. In fact, the Department granted the taxpayer's claim for a refund of City taxes paid going back to January 2009, although it did not refund the taxpayer any state gross receipts taxes. Once the taxpayer mistakenly paid gross receipts taxes on the basis that its business location was in the City, it follows that the Department erroneously transferred and distributed to the City both City and state gross receipts taxes. The Department now seeks to correct those prior misallocations of gross receipts taxes incorrectly credited to the City. It may do so under Section 7-1-6.15(B). However, in this case, pursuant to Section 7-1-6.15(C), the Department is barred from recovering any excess state and municipal local option gross receipts tax revenue transferred or distributed to the City in error prior to January 1, 2012, as the Secretary's determination of an excess transfer was made in January 2013.

**{16}** The Department argues that the amount transferred and distributed to the City was not "erroneous." It contends that since the amount of distribution to the City was based upon the "net receipts," the distribution was correct when made, even if the amount paid by the taxpayer was more than required to have been paid. In essence, the Department's position

is that it is not subject to the time limitation set forth in Section 7-1-6.15(C) of the Act because it cannot be responsible for taxpayer error. We are not persuaded.

**{17}**    "[N]et receipts" is defined as "the total amount of money paid by taxpayers to the [D]epartment in a month pursuant to a tax or tax act *less any refunds disbursed in that month* with respect to that tax or tax act[.]" Section 7-1-3(J) (emphasis added). As an initial matter, because there was no refund to the taxpayer of state gross receipts tax, the term "net receipts" has no application to the Department's distribution of those taxes to the City. Further, the plain language of Section 7-1-3(J) provides that the "net receipts" refers to money paid to the Department, "less any refunds disbursed in *that* month." (Emphasis added.); *see* § 7-19D-7(B) (stating that the transfer of tax collected for the municipality, less fees, credits, refunds, and interest "shall be made within the month following the month in which the tax is collected"). That is not the situation in this case where the refund was not disbursed in the same single month. Here, the Department is attempting to use a statutory provision that governs how an amount of a distribution is to be calculated, i.e., the definition of "net receipts"—to define what is meant to be an erroneous distribution in a statutory provision that concerns adjustments of distributions or transfers previously made and later determined to be erroneous. The Department provides no support for this assertion, and we have found none. Where a party cites no authority to support an argument, we may assume no such authority exists. *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329.

**{18}**    In any event, nothing in Section 7-1-6.15 suggests that the determination of a prior erroneous distribution or transfer must be based on whether the "net receipts" were correct at the time of distribution. The plain language of Section 7-1-6.15 simply states that the Department may correct errors in distribution or transfer of gross receipts taxes pursuant to either Section 7-1-6.4 or with respect to any local option gross receipts tax imposed by a municipality, subject to certain exceptions. That is precisely what the Department sought to do in this case thus implicating Section 7-1-6.15's relevant provisions.

**{19}**    We also reject the Department's argument that the term "erroneous distribution or transfer" refers to internal mistakes by the Department only and does not include taxpayer error resulting in excess distributions and transfers. First, the statutory provision at issue provides no such limitation. Second, reading the statute to say that the Department can only enforce the statute based on its own error—an incorrect key entry, for example—is an illogical distinction that necessarily leaves the Department in a proverbial catch-22 situation. *See Ramirez v. IBP Prepared Foods*, 2001-NMCA-036, ¶ 16, 130 N.M. 559, 28 P.3d 1100 (stating that "[i]n interpreting a statute, we look to the statute as a whole[ and] . . . attempt to achieve internal consistency"), *superseded by statute on other grounds as stated in Baca v. Los Lunas Cmty. Programs*, 2011-NMCA-008, ¶ 24, 149 N.M. 198, 246 P.3d 1070. Such an interpretation would leave the Department with *no* statutory authority to recover erroneous distributions or transfers of gross receipts tax revenue as a result of taxpayer error. That is surely not the result the Department is seeking. Finally, if the New Mexico Legislature had intended to limit the erroneous distributions or transfers to errors caused by

the Department only, it could readily have demonstrated such an intent by including language to that effect. *See Starko, Inc. v. Presbyterian Health Plan, Inc.*, 2012-NMCA-053, ¶ 49, 276 P.3d 252 ("If the Legislature wanted to condition the applicability of [a] payment scheme on the dispensing of the lesser expensive, therapeutic equivalent drug, it would have included those terms within the statute."). It did not do so, and we decline to read such language into the statute.

**{20}** As a final matter, although not essential to our decision, we note that important policy considerations also weigh in favor of our plain reading of an "erroneous" distribution or transfer and, therefore, also in favor of applying the strict limitations period contained in Section 7-1-6.15(C). It is evident that our Legislature set out a timetable within which the Department can recover erroneously transferred and distributed gross receipts taxes, in part, for the purpose of enabling municipalities to ascertain the amount of taxes they will receive in order that they might adopt a responsible and fairly accurate budget. To ignore the plain language of Section 7-1-6.15 would not only thwart legislative intent, but would introduce uncertainty into the administration of local government. Our interpretation that the Legislature intended to protect municipal revenues is bolstered by Section 7-1-6.15(D), which allows the Department and municipality to spread recovery of excess transfers totaling more than 10% of the municipality's average monthly gross receipts tax receipts through an agreed-upon installment plan.

**{21}** It is not difficult to imagine the detrimental consequences that a municipality would suffer if left with a significant shortfall in its funds as a result of having to return erroneously distributed tax revenue. Indeed, in this case, permitting the Department to recover erroneously transferred and distributed gross receipts tax revenue from the City without regard to any time limitation would clearly have had a catastrophic effect on the City and its citizens. The undisputed facts established that the $2,317,816.04 in erroneous payments that the Department sought to recover was equivalent to about 40% of the City's total general fund budget for fiscal year 2013 and exceeded the remaining budget for the 2013 fiscal year. If the Department was allowed to recoup the erroneously distributed and transferred tax revenues from prior years, the City would have been forced to severely cut essential City services, including police, fire, public utilities, maintenance, and community services. Such a cut in services would necessarily impact the safety and welfare of the City's citizens and would create a potentially dangerous condition in the City.

**{22}** We are not persuaded by the Department's argument that prohibiting it from recovering money the State is owed would lead to municipalities obtaining economic windfalls against which the Department could not protect. As a preliminary matter, given that this is the first case of its kind to reach the appellate courts, there is clearly no systemic problem on the horizon. More importantly, the Department is not prohibited from recovering money erroneously distributed or transferred to a municipality. Rather, Section 7-1-6.15(C) simply provides a time limit of one year within which the Department can seek repayment. We conclude that the language of Section 7-1-6.15 is clear and there is no authority for the Department to circumvent the statutory scheme established by the Legislature. Accordingly,

8

we affirm the decision of the district court.

**CONCLUSION**

**{23}** We affirm the decision of the district court.

**{24}** **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**MICHAEL E. VIGIL, Judge**

_____
**M. MONICA ZAMORA, Judge**