**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-008**

**Filing Date: December 15, 2010**

**Docket No. 29,108**

**FELIX E. BACA,**

  **Worker/Appellee/Cross-Appellant,**

**v.**

**LOS LUNAS COMMUNITY PROGRAMS**
**and STATE RISK MANAGEMENT DIVISION,**

  **Employer-Insurer/Appellant/Cross-Appellee.**

**APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION**
**Terry S. Kramer, Workers' Compensation Judge**

Gerald A. Hanrahan
Albuquerque, NM

for Appellee/Cross-Appellant

Hatcher & Tebo, P.A.
Christopher J. Tebo
Scott P. Hatcher
Santa Fe, NM

for Appellant/Cross-Appellee

**OPINION**

**ROBLES, Judge.**

**{1}** Felix Baca (Worker) was awarded workers' compensation benefits for the care and treatment of post traumatic stress syndrome (PTSD), which he developed as a result of a sexual assault suffered during the course and scope of his employment. Los Lunas Community Programs (Employer) and State Risk Management Division (Insurer) (collectively, Defendants) appeal from the order of the workers' compensation judge (WCJ), claiming that the WCJ improperly concluded that Worker was psychologically unable to

1

provide notice of the sexual assault within the fifteen-day time period required by NMSA 1978, Section 52-1-29(A) (1990) and improperly denied Defendants' request for an independent medical examination (IME) on the issue of causation. Worker filed a cross-appeal, arguing that the WCJ improperly excluded overtime pay from its award of temporary total disability (TTD) benefits under NMSA 1978, Section 52-1-25.1 (2005). We conclude that (1) Worker's notice of injury was timely, (2) the WCJ properly denied Defendants' request for an IME on the issue of causation, and (3) the WCJ improperly excluded overtime pay from its award of TTD benefits. Accordingly, we reverse in part and remand to the WCJ with instructions to recalculate Worker's compensation benefits.

## I.    BACKGROUND

{2}    Employer provides housing facilities and treatment centers in Los Lunas, New Mexico for mentally and physically disabled persons (consumers). Worker is a "Psych Tech" at these facilities and his duties include supervising, caring for, and assisting the consumers both in the home and in the community. In December 2005, Worker was assigned to Cortez House, which housed George Rael, a convicted sex offender.

{3}    On December 10, 2005, Worker accompanied Rael on an overnight visit to Clovis, New Mexico. As part of his job duties, Worker was required to share a motel room with Rael. During the overnight visit, Rael, who is physically much larger than Worker, sexually assaulted and sodomized Worker. Afterward, Rael repeatedly threatened to hurt Worker if he ever told anyone about the incident. Given Rael's threats and Worker's shame and fear, Worker did not immediately report the sexual assault.

{4}    Approximately two days later, Rael attempted to commit suicide. Worker saved Rael's life by providing emergency medical aid and dialing 911. During an internal investigation into Rael's suicide attempt, Rael reported that Worker had sexually assaulted him during the trip to Clovis. Worker denied the allegation, but did not report that he had been sexually assaulted by Rael.

{5}    On December 29, 2005, nineteen days after the incident, Worker informed Employer of the sexual assault. Pursuant to the Employee Assistance Program, Employer referred Worker to Deborah Okon, a clinical psychiatrist, who diagnosed Worker with PTSD. Dr. Okon advised Worker to take time off from work in order to reduce his symptoms, which included anxiety, depression, panic attacks, an inability to eat or sleep, nausea, hyper-vigilance, and flashbacks. On April 1, 2006, Worker returned to work, but was assigned to a different facility because Dr. Okon believed that it would be psychologically harmful for Worker to have contact with Rael at Cortez House. At the new facility, Worker received less overtime hours and, therefore, less overtime pay than he typically earned prior to the sexual assault.

{6}    Following a trial on the merits, the WCJ found that the sexual assault was a workers' compensation accident, which arose out of Worker's employment, and awarded

2

compensation benefits for the care and treatment of Worker's PTSD. However, the WCJ rejected Worker's claim that he was entitled to TTD benefits under Section 52-1-25.1(C) for lost overtime pay. Defendants' appeal and Worker's cross-appeal followed. Additional facts and procedural history will be provided as necessary.

## II. DISCUSSION

### A. Jurisdiction

**{7}** As a preliminary matter, we address the issue of appellate jurisdiction. *See Dixon v. State Taxation & Revenue Dep't*, 2004-NMCA-044, ¶ 29, 135 N.M. 431, 89 P.3d 680 ("[J]urisdiction is basic to any appeal, and an appellate court may raise a jurisdictional issue sua sponte." (internal quotation marks and citation omitted)). Jurisdiction is a question of law, which we review de novo. *City of Las Cruces v. Sanchez*, 2007-NMSC-042, ¶ 7, 142 N.M. 243, 164 P.3d 942 ("The extent of a court's appellate jurisdiction is a question of law, which we review de novo.").

**{8}** Pursuant to Rule 12-601 NMRA, a direct appeal from an administrative agency must be filed within thirty days from the date of the order, decision, or action appealed from. However, NMSA 1978, Section 52-5-8(B) (1989) provides that "[a] decision of the workers' compensation judge is reviewable by the court of appeals *in the manner provided for other cases* and is subject to stay proceedings as provided by the rules of civil procedure for the district courts[.]" (Emphasis added.) In *Bianco v. Horror One Prods.*, 2009-NMSC-006, ¶ 10, 145 N.M. 551, 202 P.3d 810, the Supreme Court determined that Section 52-5-8 incorporates "the statutory and appellate scheme for taking appeals from district courts into workers' compensation cases." Thus, the WCJ, like the district court, retains jurisdiction for a period of thirty days to rule on post-judgment motions under NMSA 1978, Section 39-1-1 (1917), and "the time for filing a notice of appeal does not begin to run until the express denial of such motions" under Rule 12-201(D) NMRA. *Bianco*, 2009-NMSC-006, ¶ 12.

**{9}** In this case, the WCJ filed its final order on August 27, 2008. Sixteen days later, Defendants filed a motion for reconsideration. The WCJ denied Defendants' motion for reconsideration and, twenty days later, Defendants filed their notice of appeal. Pursuant to Section 39-1-1 and Rule 12-201, we conclude that Defendants' notice of appeal was timely filed. Accordingly, we have appellate jurisdiction to address the merits of Defendants' appeal.

### B. Standard of Review

**{10}** "We review factual findings of Workers' Compensation Administration judges under a whole record standard of review." *DeWitt v. Rent-A-Center, Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341. "Whole record review involves a review of all the evidence bearing on the WCJ's decision in order to determine if there is substantial evidence to support the result." *Flores v. McKay Oil Corp.*, 2008-NMCA-123, ¶ 7, 144 N.M. 782, 192 P.3d 777. "Substantial evidence on the record as a whole is evidence demonstrating the

3

reasonableness of an agency's decision, and we neither reweigh the evidence nor replace the fact finder's conclusions with our own." *DeWitt*, 2009-NMSC-032, ¶ 12 (citation omitted).

**{11}** We review the WCJ's legal conclusions regarding statutory construction de novo. *Id.* ¶ 14.

> We look first to the plain meaning of the statute's words, and we construe the provisions of the [Workers' Compensation Act (Act)] together to produce a harmonious whole. After we determine the meaning of the statutes, we review the whole record to determine whether the WCJ's findings and award are supported by substantial evidence.

*Id.* (internal quotation marks and citation omitted).

## C.    Notice

**{12}** Worker reported the sexual assault to Employer on December 29, 2005, nineteen days after the incident. Worker testified that he did not report the sexual assault sooner because he felt scared and ashamed. Dr. Okon testified that Worker was psychologically unable to report the sexual assault due to

> [t]he shame, the intense fear that people go through when they go through a horrible, traumatic event. He was experiencing nausea and exhaustion because he couldn't sleep, he wasn't able to eat, he had just a whole gamut of both psychological and physical responses to this. And that's why I'd say that he couldn't possibly -- from the way he presented to me, he was not able to tell.

Additionally, Worker continued to work with Rael after the sexual assault, and Dr. Okon explained that Worker's "fear of being with [Rael]" was an "added component" that contributed to his inability to report the incident.

**{13}** The WCJ found that "Worker, by reason of his injury, was prevented from giving notice within [fifteen] days of the assault" and, therefore, Worker's late notice was excused under Section 52-1-29(A). The WCJ further found that Employer's failure to establish that Workers' Compensation Administration (WCA) posters had been posted conspicuously around Cortez House at the time of the incident tolled the notice period to sixty days under Section 52-1-29(B). Thus, under both Subsections A and B of the statute, the WCJ concluded that Worker had given timely notice according to law.

**{14}** On appeal, Defendants claim that the evidence was insufficient to support the WCJ's conclusion that Worker had provided timely notice of his injury. Specifically, Defendants argue that the WCJ's reliance on Dr. Okon's expert medical testimony was flawed because Dr. Okon based her opinion "exclusively on the subjective complaints and self-reports of her patient." Additionally, Defendants point out that there was no evidence establishing the

4

"verified absence" of WCA posters at Cortez House, rather the witnesses simply could not recall whether such posters had been conspicuously posted.

**{15}**    Section 52-1-29(A) provides, in relevant part:

> Any worker claiming to be entitled to compensation from any employer shall give notice in writing to his employer of the accident within fifteen days after the worker knew, or should have known, of its occurrence, unless, by reason of his injury or some other cause beyond his control, the worker is prevented from giving notice within that time, in which case he shall give notice as soon as may reasonably be done and at all events not later than sixty days after the occurrence of the accident.

"The primary purpose of requiring the employee to give . . . written notice is to enable the employer to investigate the facts while they are accessible and, if necessary, to employ doctors so as to speed recovery." *Waymire v. Signal Oil Field Serv., Inc.*, 77 N.M. 297, 301, 422 P.2d 34, 37 (1966).  However, "the law does not exact the impossible of the employee, lateness of both notice and claim may be excused for various reasons, including . . . *mental or physical incapacity, minority, and the like.*" *Montell v. Orndorff*, 67 N.M. 156, 159-60, 353 P.2d 680, 682-83 (1960) (emphasis added) (quoting 2 A. Larson, *Larson's Workmen's Compensation Law* at p. 251 [now vol. 2B, § 78.40 (1989)]).

**{16}**    We conclude that the WCJ's factual finding with respect to Worker's inability to report the sexual assault prior to December 29, 2005, is amply supported by the record.  Dr. Okon's expert medical testimony regarding Worker's mental state and Worker's testimony regarding his intense fear, shame, and trauma, both provide a sufficient factual basis for the WCJ's finding that Worker's PTSD prevented him from reporting the sexual assault within the statutory time period.

**{17}**    In support of their claim to the contrary, Defendants rely on *Bragg v. ABN AMRO N. Am., Inc.*, 579 F. Supp. 2d 875 (E.D. Mich. 2008).  In *Bragg*, the employee sought both short- and long-term disability benefits for post-polio syndrome and depression.  The employer denied her claim for benefits after six peer reviews conducted by board-certified physicians, including a neuropsychologist, a clinical psychologist, and a psychiatrist, found insufficient evidence of a functional impairment that would preclude the employee from performing the core elements of her occupation. *Id.* at 897-98.  The United States District Court of the Eastern District of Michigan affirmed the denial of benefits because "as the peer review physicians observed, there is a significant absence of objective medical documentation to support Plaintiff's physicians' opinions regarding her condition." *Id.* at 899.

**{18}**    We conclude that *Bragg* is distinguishable from the present case.  In *Bragg*, there was conflicting medical evidence in the record regarding the extent of the employee's disability.  By contrast, in this case, there was no medical evidence to dispute or contradict Dr. Okon's expert opinion regarding Worker's mental impairment.  In light of the undisputed

5

medical evidence, we will not disturb the WCJ's determination that Worker's PTSD prevented him from giving notice within fifteen days of the sexual assault.

**{19}** Additionally, we note that PTSD is a latent injury, which does not become manifest until sometime after the traumatic event. *Flint v. Town of Bernalillo*, 118 N.M. 65, 67, 878 P.2d 1014, 1016 (Ct. App. 1994). "Our case law illustrates that, for a latent injury, the statutory clock [does] not start ticking until the worker knew, or should have known by the exercise of reasonable diligence, that he or she had sustained a compensable injury." *Garnsey v. Concrete Inc. of Hobbs*, 1996-NMCA-081, ¶ 12, 122 N.M. 195, 922 P.2d 577. The date of the injury, not the date of the accident, is determinative. *Id.*

**{20}** Although the sexual assault occurred on December 10, 2005, Worker did not develop symptoms of PTSD until many days later. Indeed, the record reflects that Worker was able to continue to perform the duties of his employment, including supervising Rael, following the sexual assault. Given the latent nature of Worker's injury, we affirm the WCJ's conclusion that Worker's notice of injury was timely under the statute.[1]

**D.    IME**

**{21}** Worker filed his complaint seeking compensation benefits on May 10, 2007. After an unsuccessful attempt at mediation, trial was scheduled for January 25, 2008 and, subsequently, rescheduled for May 21, 2008. On May 1, twenty days before trial, Defendants moved for an IME under Section 52-1-51(A) (2005). Defendants claimed that an IME was "necessary to determine the nature and extent of any psychological diagnosis, the cause of any psychological diagnosis, as well as to determine Worker's status as it relates to employment, [maximum medical improvement (MMI)] date and, if applicable, impairment rating."

**{22}** On May 19, 2008, the trial court held a hearing on Defendants' motion. At the hearing, Worker argued that Defendants' "eleventh hour" request for an IME should be denied because a trial delay, and the concomitant delay in the award of compensation benefits, would be prejudicial to Worker. The WCJ refused to delay the trial, but reserved the question of whether to order an IME after the presentation of evidence.

**{23}** Following a trial on the merits, the WCJ awarded Worker compensation benefits and ordered an IME "to address, among other things, Worker's [MMI], impairment[,] and ongoing need for medical treatment." Defendants filed a motion for reconsideration, claiming, in relevant part, that the WCJ improperly awarded compensation benefits in the absence of an IME on the issue of causation. The WCJ denied Defendants' motion for reconsideration, stating that it was "absolutely convinced that Worker was sexually assaulted while working for Employer on December 10, 2005." Thus, the scope of the IME was

---

[1]In light of our conclusion, we need not decide whether the WCJ properly determined that the conspicuous absence of WCA posters tolled the notice provision under Subsection B.

"limited to obtaining a medical opinion relating to [MMI], impairment, and future medical treatment."

**{24}**    On appeal, Defendants claim that they were entitled to an IME under Section 52-1-51(A) and that a trial delay would not have prejudiced Worker, who "was fully employed[] and[,] in addition to receiving his full salary (and occasional overtime), . . . was also receiving medical insurance benefits through his employer." In *Ramirez v. IBP Prepared Foods*, 2001-NMCA-036, 130 N.M. 559, 28 P.3d 1100, this Court addressed the requirements for an IME under the former version of the statute. We noted that the Act sets "forth an orderly process for the treatment and examination of injured workers that gives both parties the opportunity to control the medical treatment." *Id.* ¶ 12.

> The statute allows the party who did not make the first selection to choose a different health care provider after sixty days of treatment, without a showing that the initial provider was not providing reasonable medical care. Further, the statute sets out the procedure for other changes in the health care provider. . . . [E]ither party may petition for an IME in the event of a medical dispute.

*Id.* (citations omitted); *see* NMSA 1978, § 52-1-49 (1990). We concluded that a party could not circumvent this orderly process by seeking an IME under Section 52-1-51(A) in lieu of a change of a health care provider under Section 52-1-49. Accordingly, "disputes regarding medical issues must be between health care providers" rather than between the parties. *Ramirez*, 2001-NMCA-036, ¶ 16; *see Grine v. Peabody Natural Res.*, 2006-NMSC-031, ¶ 26, 140 N.M. 30, 139 P.3d 190 (construing the prior version of the statute and holding that "[t]he WCJ properly denied [e]mployer/[i]nsurer's request for an IME[] because[,] at the time of the request, there was no conflict between authorized medical providers as required by Section 52-1-51(A).")

**{25}**    We further held that causation was not a medical issue that would allow for an IME. *Ramirez*, 2001-NMCA-036, ¶ 17. We did "not believe that the [L]egislature intended the IME statute to provide Employer with a medical expert to battle an existing medical provider on the issue of causation." *Id.* Such a construction of the statute would "create[] controversy where it would otherwise not exist and leads to expensive and time consuming litigation." *Id.*

**{26}**    In 2005, however, the Legislature amended Section 52-1-51(A), in relevant part, to provide that either party may petition a WCJ for an IME "[i]n the event of a dispute *between the parties* concerning . . . the *cause of an injury* or any other medical issue[.]" 2005 N.M. Laws, ch. 150, § 1 (emphasis added). Under the plain language of the statutory amendment, a dispute between the parties concerning the issue of causation, such as the one at issue in this case, may be sufficient to warrant the grant of an IME. *See Grine*, 2006-NMSC-031, ¶ 26 (discussing the statutory amendment).

**{27}**    Nonetheless, Defendants' request for an IME necessarily included a request for a continuance of the trial date. We review the WCJ's grant or denial of a motion for

continuance for an abuse of discretion. *See Lopez v. City of Albuquerque*, 118 N.M. 682, 685, 884 P.2d 838, 841 (Ct. App. 1994).

**{28}**     We conclude that the WCJ did not abuse its discretion by refusing to postpone trial for a second time. Defendants had knowledge of Dr. Okon's medical opinion regarding causation as early as May 10, 2007, when Worker submitted a letter from Dr. Okon explaining that Worker had PTSD because he "was traumatized (raped) by [Employer's] consumer while he was working for [Employer's] agency." Despite this knowledge, Defendants did not request an IME on the issue of causation until more than a year later, twenty days before trial was scheduled to commence. By this time, Worker had expended significant sums of money on prescription drugs and co-payments for the care and treatment of his injury. Additionally, Worker had been deprived of the overtime pay that he previously had earned prior to the sexual assault. *See infra* Part E. Under these circumstances, the WCJ reasonably could have found that Defendants' request for a continuance was untimely, and a delay in the commencement of trial would be prejudicial to Worker. We, therefore, affirm the WCJ's ruling.

**E.     TTD**

**{29}**     Prior to the sexual assault, Worker earned an average weekly wage of $884.31, which included $455.36 in regular hourly wages and $428.95 in overtime pay. After the sexual assault, Worker was reassigned to a different facility, where he received less overtime pay. Given the disparity between Worker's pre- and post-injury wages, Worker sought TTD benefits under Section 52-1-25.1.

**{30}**     The WCJ concluded that Worker was entitled to TTD benefits for "the time he was off work from approximately December 29, 2005 through April 1, 2006." Because Worker had used leave time during this period, the WCJ determined that

> Worker may elect to have his leave time reinstated and receive workers' compensation benefits for the time he was off work or, alternatively, Worker may continue to use leave time as taken and there shall be no deduction against the 500 weeks of benefits entitlement. Worker may not receive both workers' compensation benefits and leave time payment for the same week.

The WCJ rejected Worker's claim that he was entitled to TTD benefits after he returned to work on April 1, 2006, finding that "Worker was not medically restricted from working his regular hours" and that Employer had not reduced Worker's regular hours under Section 52-1-25.1.

**{31}**     On appeal, Worker claims that the WCJ improperly excluded overtime pay from its award of TTD benefits under Section 52-1-25.1. Employer responds that an award of overtime pay is discretionary under the statute and that the WCJ properly exercised its discretion because Worker failed to prove that he was offered reduced overtime hours because of his disability.

8

**{32}**     A worker is entitled to full TTD benefits if he is unable "by reason of accidental injury arising out of and in the course of the worker's employment, to perform the duties of that employment prior to the date of the worker's [MMI]." Section 52-1-25.1(A); *see Ortiz v. BTU Block & Concrete Co.*, 1996-NMCA-097, ¶ 10, 122 N.M. 381, 925 P.2d 1 (recognizing that absent an applicable exception "the statute requires payment of full total disability benefits"). A worker is entitled to reduced TTD benefits "equal to two-thirds of the difference between the worker's pre-injury wage and the worker's post-injury wage . . . [i]f prior to the date of [MMI], an injured worker's health care provider releases the worker to return to work and the employer offers work at less than the worker's pre-injury wage[.]" Section 52-1-25.1(C). Subsection C furthers the legislative goals of the Act by encouraging employers to rehire injured workers and compensating workers who return to work at less than their pre-injury wage. *Gurule v. Dicaperl Minerals Corp.*, 2006-NMCA-054, ¶ 7, 139 N.M. 521, 134 P.3d 808.

**{33}**     Compensation benefits, including TTD benefits, are calculated based on a worker's pre-injury "average weekly wage." NMSA 1978, Section 52-1-20(A) (1990); *cf. Chavez v. S.E.D. Labs.*, 2000-NMSC-034, ¶ 20, 129 N.M. 794, 14 P.3d 532 (using the terms "average weekly wage" and "pre-injury wage" interchangeably). A worker's average weekly wage is "the weekly wage earned by the worker at the time of the worker's injury, including *overtime pay* and gratuities but excluding all fringe or other employment benefits and bonuses." Section 52-1-20(A) (emphasis added).

**{34}**     The WCJ determined that Worker was entitled to TTD benefits for the time period that he was unable to work due to his PTSD, December 29, 2005 through April 1, 2006, but excluded overtime pay from the amount of the award. Under Section 52-1-20(A), however, compensation benefits plainly include overtime pay. Accordingly,  the WCJ erred by excluding overtime pay from the calculation of TTD benefits for this time period. Under Sections 52-1-20(A) and 52-1-25.1(A), Worker was entitled to full TTD benefits in the amount of his average weekly wage of $884.31.

**{35}**     Because overtime pay is compensable under the statute, we conclude that an injured worker is entitled to reduced TTD benefits under Section 52-1-25.1(C) if an employer offers reduced overtime hours after the worker returns to work. The worker need not prove that the reduction in his overtime hours was caused by his disability. Rather, the plain language of the statute creates a presumption that the worker's lost earning capacity is due to his work-related injury. *See* Section 52-1-25.1(C) ("If, prior to the date of [MMI], an injured worker's health care provider releases the worker to return to work and the employer offers work at less than the worker's pre-injury wage, the worker *is disabled* and *shall* receive temporary total disability compensation benefits equal to two-thirds of the difference between the worker's pre-injury wage and the worker's post-injury wage." (emphasis added)); *State v. Guerra*, 2001-NMCA-031, ¶ 14, 130 N.M. 302, 24 P.3d 334 ("The word 'shall' as used in a statute is generally construed to be mandatory.").

**{36}**     In this case, Employer offered Worker significantly less overtime hours after he returned to work on April 1, 2006. Under Section 52-1-25.1(C), Worker is entitled to

9

reduced TTD benefits in the amount of two-thirds the difference between his pre-injury average weekly wage and his post-injury wage until he reaches MMI.

## III.     CONCLUSION

**{37}**     We conclude that (1) the evidence was sufficient to support the WCJ's determination that Worker's PTSD prevented him from reporting the sexual assault within fifteen days, (2) the WCJ did not abuse its discretion by denying Defendants' motion for a continuance to permit an IME on the issue of causation, and (3) the WCJ improperly excluded overtime pay from its award of TTD benefits.  Accordingly, we reverse the order of the WCJ in part and remand for recalculation of Worker's compensation benefits.

**{38}     IT IS SO ORDERED.**

_____
**ROBERT E. ROBLES, Judge**

**WE CONCUR:**

_____
**MICHAEL D. BUSTAMANTE, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topic Index for _Baca v. Los Lunas Cmty. Programs_, Docket No. 29,108**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-AJ | Appellate Jurisdiction |
| AE-SR | Standard of Review |
| | |
| **WC** | **WORKERS COMPENSATION** |
| WC-EX | Expert Witness |
| WC-NO | Notice |
| WC-PD | Psychological Disability |
| WC-RC | Rate of Compensation |