Certiorari Granted, January 10, 2014, No. 34,455

IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2014-NMCA-022

Filing Date: November 14, 2013

Docket No. 32,407

THE CITY OF SANTA FE,

       Plaintiff-Appellee,

v.

GARY TOMADA, Director of the Alcohol
and Gaming Division of the State of New
Mexico Regulation and Licensing Department,
and WESTERN REFINING SOUTHWEST, INC.,

       Defendants-Appellants.

APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY
Raymond Z. Ortiz, District Judge

Geno Zamora, City Attorney
Mark L. Allen, Assistant City Attorney
Santa Fe, NM

for Appellee

Gary K. King, Attorney General
Andrea R. Buzzard, Assistant Attorney General
Santa Fe, NM

for Appellant Gary Tomada

Montgomery & Andrews, P.A.
Suzanne C. Odom
Seth C. McMillan
Andrew S. Montgomery
Santa Fe, NM

1

for Appellant Western Refining Southwest, Inc.

**OPINION**

**BUSTAMANTE, Judge.**

**{1}** The issue in this case involves the proper way to measure the distance between a school and a "licensed premise" in which liquor is sold. The Director of the Alcohol and Gaming Division approved the transfer of a liquor license applying the Division's longstanding regulation and method of measurement. The district court disagreed, holding that the regulation conflicted with the Liquor Control Act's method of measurement. Determining that the Director's interpretation of the Liquor Control Act is correct, we reverse.

**BACKGROUND**

**{2}** Western Refining Southwest, Inc. (Western) applied to the Alcohol and Gaming Division (the Division) of the State of New Mexico Regulation and Licensing Department to transfer a liquor license from one location to 5741 Airport Road, Santa Fe, New Mexico. The property at 5741 Airport Road is located at the northeast corner of the intersection of Airport Road, a heavily commercialized, four-lane arterial thoroughfare, and South Meadows Road, a two-lane road. Three structures are situated on that property: (1) a restaurant closest to the intersection; (2) a Giant gas station canopy set part-way back from the intersection; and (3) a Giant convenience store comprising the licensed premises, set back farthest from the intersection.

**{3}** At the southwest corner of the intersection, on the far side of Airport Road and South Meadows Road, is a tract containing the buildings and grounds of an elementary school and a Head Start facility. The straight-line distance from the Giant convenience store to the north boundary of the school grounds is 377.53 feet. The straight-line distance from the south boundary of the real property on which the Giant convenience store is situated to the north boundary of the school grounds is 155.05 feet.

**{4}** After a public hearing, the Division found that Western was "not prohibited from receiving or holding a liquor license, . . . had submitted all information required by the Liquor Control Act [(the Act)], and . . . was qualified to hold or receive a liquor license." *See* NMSA 1978, §§ 60-3A-1 to -12 (1981, as amended through 2012) (the Liquor Control Act). Pursuant to NMSA 1978, Section 60-6B-4(A) (1981) of the Act, the Division forwarded the application to the City of Santa Fe (the City). Following a public hearing, the City denied the transfer based on its conclusions that the proposed site was within 300 feet of a school—which is prohibited by NMSA 1978, Section 60-6B-10 (1997)—and as such posed a threat to public health and safety.

**{5}** Western requested that the Division approve the transfer in spite of denial by the

2

City. Relying on *Southland Corp. v. Manzagol*, 1994-NMSC-099, 118 N.M. 423, 882 P.2d 14, the Division Director approved the transfer request. The Director found that, contrary to the City's finding, (i) Western's proposed location was not less than 300 feet from a school when the distance was measured using the Division's longstanding regulation specifying how the distance between a liquor establishment and a school should be measured, and (ii) there was not substantial evidence to support the City's finding that the transfer posed a threat to public health and safety. *See* 15.10.32.8 NMAC (12/31/01); *Southland Corp.*, 1994-NMSC-099, ¶ 1 ("[T]he [d]irector [of the division] may approve a transfer of a license despite municipal disapproval."). The City timely appealed to the district court.

{6}    The district court reversed the approval of the transfer. The district court concluded that (i) the language of Section 60-6B-10 of the Act unambiguously required measurement from the property line of the school to the property line of the lot on which the licensed premises were located, and (ii) the regulation promulgated by the Division was unlawful because it described a different measurement method. Specifically, the district court held the Division's regulation "constitutes executive creation of substantive law" and therefore violated the constitutional principle of separation of powers. *See* N.M. Const. art. III, § 1. The Division, with Western as intervenor, timely petitioned for a writ of certiorari to this Court, which was granted. *See* Rule 12-505 NMRA.

**DISCUSSION**

{7}    We begin by reviewing the governing statute and the associated regulation. Section 60-6B-10 states:

> No license shall be issued by the director for the sale of alcoholic beverages at a licensed premises . . . that is within three hundred feet of any church or school. . . . For the purposes of this section, all measurements taken in order to determine the location of licensed premises in relation to churches or schools shall be the straight line distance from the property line of the licensed premises to the property line of the church or school.

The accompanying regulation, promulgated by the Division, describes the measurement requirements differently.

> All measurements for the purpose of determining the location of a licensed premises in relation to churches [or] schools . . . shall be the shortest direct line measurement between the actual limits of the real property of the church [or] school . . . in which there is regularly conducted church services [or] educational functions . . . , and the licensed premises where alcoholic beverages are proposed to be sold.

15.10.32.8 NMAC. Whereas the statute references the "property line" of the school or

3

church and the "property line" of the licensed premises, the regulation makes no mention of "property lines" and instead focuses on the "actual limits" of the property where certain activities occur.

**{8}**     Our task on appeal is to determine whether the Division's regulation—and the Director's application of it—accurately reflects the Legislature's intent in passing Section 60-6B-10.  If so, then the Director's approval of Western's application based on its calculation of the distance to the school was appropriate.

**{9}**     All of the parties cite to *Regents of University of New Mexico v. Hughes* in support of their positions.  1992-NMSC-049, 114 N.M. 304, 838 P.2d 458.  *Hughes* is one of few appellate decisions construing Section 60-6B-10 and, thus, we examine it in some detail. We begin by outlining the facts and holdings of that case, then turn to how those holdings apply here.

**{10}**     In *Hughes*, the Regents of the University of New Mexico objected to transfer of a liquor license to a location across a street from a "service center building" and associated parking lot owned by the University.  1992-NMSC-049, ¶¶ 2-3.  The division approved the transfer, the Regents appealed, and the district court reversed the appeal.  *Id.* ¶ 2.  There was no dispute that the building and parking lot were within 300 feet of the proposed licensed premises, nor was there a dispute about whether the University was a school.  *Id.* ¶¶ 3, 27. Rather, the question was whether "it follows inexorably that a proposed licensed premises within 300 feet of any part of the University, regardless of the use to which that part is put, is *ipso facto* within 300 feet of a school as contemplated by the statute."  *Id.* ¶ 27.

**{11}**     Our Supreme Court framed the issue in *Hughes* as "whether the word 'school' in Section 60-6B-10 . . . is to be given a functional or a literal interpretation."  *Hughes*, 1992-NMSC-049, ¶ 1.  "By 'functional', [the Court] mean[t] an interpretation focusing on the purposes for which property owned by a school is used, as opposed to a 'literal' interpretation focusing only on the fact that the property is owned by a school."  *Id.*  The Court concluded that because Section 60-6B-10 referred to "the boundary of the property nearest the licensed premises," it "call[ed] for, or at least permit[ted], an inquiry into the nature of the property so bounded—i.e., to what use is that property being put; is it used for school . . . purposes or for some other purpose having no relation to the object of the statute?"  *Hughes*, 1992-NMSC-049, ¶ 27 (emphasis omitted).

**{12}**     Noting that the Act did not define "school," the Court turned to a regulation interpreting the Act, which stated at that time that

> [a]ll measurements for the purpose of determining the location of designated premises in relation to . . . schools . . . shall be direct line measurements between the *actual limits* of the real property of the . . . school . . . *in which there is regularly conducted . . . educational functions* . . . ; and the building in which the liquor is proposed to be sold.

4

*Id.* ¶ 30 (emphasis added) (omissions in original) (citing ABC Regulation No. 6B-10.(A), the predecessor regulation to what is now 15.10.32.8 NMAC). Emphasizing that the agency's interpretation was presumed to be correct and entitled to deference, the Court decided that a test based on the function of the portion of the University's property within 300 feet of the licensed premises should prevail over a literal interpretation of the statute that would require measurement from the boundary of the property owned by the University. *Hughes*, 1992-NMSC-049, ¶ 30; *Lantz v. Santa Fe Extraterritorial Zoning Auth.*, 2004-NMCA-090, ¶ 7, 136 N.M. 74, 94 P.3d 817 ("[W]e give persuasive weight to long-standing administrative constructions of statutes by the agency charged with administering them." (internal quotation marks and citation omitted)). The Court concluded that this functional analysis was consistent with the purpose of the statute, which is to "protect the area occupied by a church or school, including its yards and grounds, from the inimical milieu commonly associated with establishments selling alcoholic beverages." *Hughes*, 1992-NMSC-049, ¶ 33; *see* N.M. Att'y Gen. Op. 74-18 (1974). And, having determined that the service center building and parking lot were not used for instructional purposes, the Court observed that there was "no need to protect the workers and others who may use the . . . service center and associated parking lot from the 'inimical milieu' " of the licensed premises across the street. *Hughes*, 1992-NMSC-049, ¶¶ 34, 36. The Court remanded to the district court with instructions to affirm the division's grant of the transfer. *Id.* ¶ 37.

**{13}** Though the Court rejected use of the term "property line" in the statute to "inexorably" mean the boundary of the lot owned by the school, it emphasized that its holding did not mean that "only the building or other structure used for educational purposes falls within the definition of 'school'" and stated that adjacent land, including parking lots, might be considered a "school" if it is used for instructional purposes. *Id.* ¶¶ 27, 35. Rather, under its holding the term "property line" in the statute means the boundary line around the property on which school activities occur—which may or may not coincide with the boundary around the property owned by the school.

**{14}** We are, of course, fully aware that this case presents a different factual scenario from *Hughes*. Here, the parties agree that the appropriate starting measurement point for the school is its property line. This reflects on apparent acknowledgment of all parties that the entire parcel of land on which the school and Head Start program are situated is used for school purposes. The question contested by the parties is whether *Hughes* has anything to say about whether the Division's decision to measure from the edge of the licensed premises rather than from the edge of the parcel of land on which it sits is appropriate under the statute. We conclude that *Hughes* provides a useful guide for analysis.

**{15}** First, *Hughes* answers the City's statutory construction argument. The City recognizes that the term "property line" is not defined in the statute. *See* § 60-6B-10. Nonetheless, the City urges us to give the term its "ordinary meaning" as it argues it is commonly understood, i.e., "the legal boundary of a parcel of land." It is clear, however, that the *Hughes* Court rejected this interpretation of "property line." *Hughes* said that the nature of the use of the property was a relevant consideration in determining the proper

starting point for measurement under the statute. 1992-NMSC-049, ¶¶ 28, 35. We adhere, as we must, to that interpretation of the statutory language pertaining to the property line of a school.

{16} The same term—"property line"—is used in the statute when describing the starting point of measurement from a "licensed premises." Absent a compelling reason to do so, it would be illogical and inconsistent to interpret "property line" to mean one thing when applied to schools or churches in one part of a sentence but another when applied to licensed premises later in the same sentence. *See Ramirez v. IBP Prepared Foods*, 2001-NMCA-036, ¶ 16, 130 N.M. 559, 28 P.3d 1100 (stating, "[i]n interpreting a statute, we look to the statute as a whole, [and] . . . attempt to achieve internal consistency"), *superseded by statute on other grounds as stated in Baca v. Los Lunas Cmty. Programs*, 2011-NMCA-008, 149 N.M. 198, 246 P.3d 1070. Consequently, we conclude that the term "property line" as it relates to a licensed premises is subject to functional analysis analogous to that in *Hughes*. *See generally* N.M. Att'y Gen. Op. 74-18.

{17} The analysis of function as it relates to licensed premises is necessarily somewhat different, however, because while the statute does not define "school," it does define "licensed premises." *See* Section 60-3A-3(M). "[L]icensed premises" are "the contiguous areas or areas connected by indoor passageways of a structure and the outside dining, recreation and lounge areas of the structure . . . that are under the direct control of the licensee and from which the licensee is authorized to sell, serve or allow the consumption of alcoholic beverages under the provisions of its license[.]" *Id.* Thus the sale, service, or consumption of alcohol is limited to those areas, including outdoor areas, permitted by license. *See id.*; *cf.* N.M. Att'y Gen. Op. 87-10 (1987) (stating that separate licenses are required for two separate structures where there was no way to get from one to the other without going outside and that a license permits sales or services "within a distinct, designated area"). The licensed premises may or may not be contiguous with the property owned by the licensee—or, in the case of leased licensed premises, with the boundary of ownership of the property on which the licensed premises sit. *Cf. Texas Nat'l Theatres, Inc. v. City of Albuquerque*, 1982-NMSC-004, ¶¶ 13-14, 97 N.M. 282, 639 P.2d 569 (concluding that a zoning enforcement officer's measurement of the distance between the "lot line" of the property on which an adult entertainment facility was situated and the "nearest residential lot line" was reasonable where other provisions in the Comprehensive City Zoning Code "indicate[d] that the regulation applies to more than just the structure" and that zoning applies to "the entire lot and not only for the structures on the lot"). The statutory definition informs the functional analysis because "licensed premises" are, by definition, coextensive with the areas in which alcohol may be served or sold. This is the way the Director interpreted and applied the functional test in his decision.

{18} The City's argument that, "[i]f the [*Hughes*] Court recognized that a parking lot used by students meets the test of school property, then a parking lot used by customers purchasing alcohol is likewise part of the licensed premises," ignores the fact that "licensed premises" is a defined term and that the license itself defines the areas in which alcohol may

6

be sold, served, or consumed. If the license does not permit sales or service of alcohol in the parking lot, the parking lot cannot be part of the licensed premises. On the other hand, assuming for the sake of argument that sale or service of alcohol in the parking lot was permitted under the license, then that area would be part of the "licensed premises" and would have to be accounted for when measuring the distance to the nearest school or church.

{19}    The City directs us to footnote nine in *Hughes*, in which the Court mused that "[t]he part of the regulation prescribing that distances shall be measured to 'the building in which the liquor is proposed to be sold' is probably invalid as conflicting with the statutory requirement that the measurement begin at 'the property line of the licensed premises.' " *Hughes*, 1992-NMSC-049, ¶ 30 n.9. Although it recognizes that the footnote is "undeniably dict[um] because the Court decided the issue on other grounds," the City argues that the footnote "elucidates the obvious[, i.e., that t]he regulation conflicts with the statute and is[,] therefore[,] invalid." We agree that the footnote is dictum and that the Court did not rely on the regulation; accordingly, we give it little weight in our analysis. *See id.* ("[Whether the regulation conflicts with the statute] is irrelevant for purposes of this case[.]"); *see also State v. Johnson*, 2001-NMSC-001, ¶ 16, 130 N.M. 6, 15 P.3d 1233 (stating that although dicta is not binding, "the Court of Appeals should give [dicta] adequate deference and not disregard it summarily"). Furthermore, footnote nine refers to the regulation in effect in 1992, not the regulation in effect at times relevant to this case.

{20}    More importantly, we determine that the present regulation does not conflict with the statute. Regulation 15.10.32.8 of the Administrative Code was promulgated in 1997 and, unlike the regulation to which the *Hughes* Court referred, does not refer to a "building" as a reference point in the determination of the distance between a school or church and a licensed premises. Instead, it refers only to the licensed premises, a term defined by statute. *See* § 60-3A-3(M). The present regulation defines the measurement requirement as between the outer boundary of the portions of school or church property actually used for instructional or religious purposes and the outer boundary of the premises designated by the license.

> All measurements . . . shall be . . . between the *actual limits* of [1] the real property of the . . . school . . . *in which there is regularly conducted . . . educational functions* . . . and [2] *the licensed premises where alcoholic beverages are proposed to be sold*.

15.10.32.8 NMAC (emphasis added). The regulation is, therefore, consistent with the functional test set out in *Hughes* and hence the Court's construction of the statute. *See* 1992-NMSC-049, ¶ 35 (stating that its holding does not require measurement only from buildings used for instruction and that, rather, any land so used should be included in determining the outer boundary of a "school" for purposes of the statute).

{21}    Since, under *Hughes*, the determinative factor for the starting point for measurement at the school or church end is the use of the school's or church's property, we conclude that,

7

similarly, the determinative factor here is the use of the property at the other end of the measurement. Consistent with *Hughes* and the statute's definition of "licensed premises," we hold that the phrase "property line of the licensed premises" in Section 60-6B-10 refers to the outer boundary of the licensed premises themselves, i.e., the premises actually used to sell, serve, or consume alcohol.

**{22}** We note finally that the history of the statute and regulation indicates that the Division's interpretation is not contrary to the Legislature's intent. Despite the changes to the regulation in 1997, the Division's method of measurement under 15.10.32.8 NMAC has been substantially the same for over thirty-five years. *Hughes* was decided, and the functional test adopted, in 1992. 1992-NMSC-049. Yet the Legislature has not reacted to the Division's methods or the *Hughes* holding. Even though the statute has been amended twice since 1981, neither amendment modified the method of measurement. *Compare* 1981 N.M. Laws,ch. 39, § 45, *with* 1986 N.M. Laws, ch. 29, § 1, and 1997 N.M. Laws, ch. 223, § 1. We conclude that the Legislature, being aware of relevant law on the issue, considers the Division's regulation and the functional test to be consistent with the statute. *See El Paso Elec. Co. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-048, ¶ 14, 149 N.M. 174, 246 P.3d 443 ("We assume the Legislature is aware of existing law, including administrative regulations, which have the force of law." (citation omitted)); *State v. Cleve*, 1999-NMSC-017, ¶ 14, 127 N.M. 240, 980 P.2d 23 (concluding that case law was consistent with Legislative intent where, even though the statute was amended after the decision that interpreted it, the amendment made only "stylistic changes" and did not address the Court's interpretation); *Alexander v. Anderson*, 1999-NMCA-021, ¶ 17, 126 N.M. 632, 973 P.2d 884 (concluding that the fact that the Legislature did not amend a statute for fifteen years meant that it "accepted [a regulation interpreting the statute] as valid and consistent with the [statute]").

**CONCLUSION**

**{23}** The district court erred in reversing the Director's approval of Western's application to transfer of a liquor license to 5741 Airport Road, Santa Fe, New Mexico. We remand for entry of an order affirming the Director's decision.

**{24}** **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Judge**

_____

8

**J. MILES HANISEE, Judge**

**Topic Index for** *City of Santa Fe v. Tomada*, **No. 32,407**

**APPEAL AND ERROR**
Certiorari

**CONSTITUTIONAL LAW**
Separation of Powers

**GOVERNMENT**
Education and Schools
Liquor Control Act
Municipalities
Ordinances
Zoning Law

**STATUTES**
Interpretation
Legislative Intent
Rules of Construction