## BARROZO V. ALBERTSON'S

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**RODOLFO BARROZO, JR.,**
**Worker-Appellant,**
**v.**
**ALBERTSON'S, INC. and ACE AMERICAN INSURANCE COMPANY,**
**Employer/Insurer-Appellees.**

Docket No. A-1-CA-36197
COURT OF APPEALS OF NEW MEXICO
April 9, 2019

APPEAL FROM THE WORKERS' COMPENSATION ADMINISTRATION, Shanon S. Riley, Workers' Compensation Judge

### COUNSEL

Gerald A. Hanrahan, Albuquerque, NM, for Appellant

Butt, Thornton & Baehr, P.C., Rheba Rutkowski, Neysa E. Lujan, Albuquerque, NM, for Appellees.

### JUDGES

M. MONICA ZAMORA, Chief Judge. WE CONCUR: JENNIFER L. ATTREP, Judge, MEGAN P. DUFFY, Judge

**AUTHOR:** M. MONICA ZAMORA

### MEMORANDUM OPINION

**M. ZAMORA, Chief Judge.**

**{1}** Rodolfo Barrozo, Jr. (Worker) appeals from the Workers' Compensation Judge's (WCJ) order denying his motion for summary judgment and the amended compensation order entered following a trial on the merits. Worker argues that (1) the parties reached a binding settlement agreement at the mandatory mediation, and the WCJ erred in finding that the agreement was not enforceable; and (2) the WCJ erred in determining that Worker suffers a 20 percent partial loss of use to each of his elbows. We hold that

the WCJ erred in failing to enforce the settlement agreement reached by the parties at the mandatory mediation. We therefore reverse and remand with instructions to vacate the amended compensation order and enter a second amended compensation order consistent with the parties' settlement agreement. Accordingly, we need not consider the second issue relating to Worker's loss of use.

## BACKGROUND

**{2}** Worker is employed by Albertsons, Inc. as a meat cutter. ACE American Insurance Company is Albertson's insurance carrier, and we refer to Albertson's and ACE collectively as Employer. Worker developed carpal tunnel syndrome in both of his wrists and lateral epicondylitis in both of his elbows as a result of the repetitive movements involved with his job duties. There is no dispute in this case that Worker was injured within the course and scope of his employment with Employer. Worker has an unrelated medical condition, which necessitates that he continue to work full time in order to maintain health insurance benefits, and he continues to work full time as a meat cutter for Employer.

**{3}** Worker's health care providers determined that his condition would not improve so long as he continued to work as a meat cutter, and that he would likely need surgery to correct the condition. Worker elected not to have surgery, however, because his pain would likely return after the surgery if he returned to meat cutting and because he would lose his health insurance benefits given the long recovery period as a result of the surgery. Though he takes medications and has tried multiple therapies intended to help alleviate his work-related pain, Worker continues to experience constant stabbing or throbbing pain in his wrists and elbows. Worker testified that he has to work forty hours per week so that he does not risk getting his hours cut to the point where he suffers financial hardship or loses his health insurance benefits.

### Mandatory Mediation

**{4}** After Worker filed his complaint against Employer with the Workers' Compensation Administration (WCA), the parties engaged in mandatory mediation as required by NMSA 1978, Section 52-5-5(C) (2013) of the Workers' Compensation Administration Act (the Act), NMSA 1978, §§ 52-5-1 to -22 (1986, as amended 2013). Worker, his attorney, the insurance claims adjuster, and Employer's attorney were all present at the June 29, 2015 mediation, during which the parties exchanged three offers of settlement through the Mediator. Employer ultimately conveyed a "final offer" to pay Scheduled Injury (SI) benefits at 30 percent for each of Worker's elbows, one for 160 weeks and the other for 155 weeks, and 20 percent for each of Worker's wrists, one for 150 weeks and the other for 140 weeks. Worker accepted this "final offer" and the mediation ended. The parties did not memorialize the agreement in writing or on the record.

**{5}** The next day, the Mediator filed his recommended resolution, pursuant to Section 52-5-5(C), which stated:

3.      It is recommended that this case be resolved as follows:

The primary issue in this case is Worker's loss of use due to the injuries to his bilateral upper extremities. After full discussion and negotiations at the mediation conference, *the parties agreed* that Worker is entitled to loss of use/scheduled injury benefits at the rate of thirty percent (30%) for his right elbow for a period of 160 weeks, thirty percent (30%) for his left elbow for a period of 155 weeks, twenty percent (20%) for his right wrist for a period of 150 weeks, and twenty percent (20%) for his left wrist for a period of 140 weeks, beginning on September 24, 2014, the date of the maximum medical improvement. Employer/Insurer is entitled to a credit for scheduled injury indemnity benefits paid to date. Worker is entitled to a reasonable attorney[] fee, subject to approval by a workers' compensation judge.

Medical benefits remain open. Both parties reserve and retain all rights and defenses under [NMSA 1978, Section] 52-1-49 [1991] of the Workers' Compensation Act. Should the parties be unable to resolve any issue in the future, then either party may file an amended complaint with the accompanying documents required by this Administration, even within six months of this [r]ecommended [r]esolution.

(Emphasis added.) Worker filed a notice of acceptance of the recommended resolution, but Employer filed a notice of rejection of the recommended resolution, stating that "[t]he [r]ecommended [r]esolution does not provide substantial justice to the parties." The matter was assigned to a WCJ.

**Summary Judgment Proceedings**

**{6}**      Worker filed a motion for summary judgment, arguing that the agreement reached by the parties at the mandatory mediation created a binding, enforceable contract.[1] In response, Employer argued that although an agreement was reached at the mediation, it was only a "tentative" agreement, and that the parties could not be bound by it until both parties either accepted the recommended resolution or failed to reject it within thirty (30) days of its issuance. Employer explained that it considered the recommended resolution, and determined that because Worker was "back at work," 100 percent total loss of use compensation was not appropriate. Employer argued that the thirty-day time period provided under the Act and accompanying regulations, which provides parties with the opportunity to either accept or reject the recommended

---

[1]Employer argues that it was improper for Worker to discuss the particulars of the settlement negotiation with the WCJ, referring to Rule 11-408 NMRA, as support for its argument. We disagree as Rule 11-408 only bars disclosure of settlement offers as evidence that a party is liable for the claims at issue or to impeach by a prior inconsistent statement or contradiction. See Rule 11-408(A); Jesko v. Stauffer Chem. Co., 1976-NMCA-117, ¶ 14, 89 N.M. 786, 558 P.2d 55 (recognizing where this is an acceptance of an offer that results in an enforceable contract, subsequently one of the parties renounces the contract, the aggrieved party may prove the offer, acceptance and surrounding circumstances).

resolution, is in place to allow parties to evaluate the recommendation and determine whether it is in their best interest. Employer further argued that this procedure is particularly important because the mandatory mediation occurs before the parties have the opportunity to conduct full discovery or fully evaluate the claims. The WCJ denied Worker's motion for summary judgment, and the parties then proceeded to trial on the merits.

**Trial on the Merits**

{7}     At trial, Worker again asked the WCJ to enforce the settlement agreement and Employer, for its part, advanced the same arguments it made on summary judgment to oppose enforcement of the settlement agreement. Worker testified that several offers went back and forth before Employer made a final offer that he accepted. There were no conditions imposed on the offer. The mediation ended after he accepted Employer's offer. The insurance claims adjuster who attended the mediation in Worker's case testified at trial. The claims adjuster could not remember anything about the mediation in this case but offered that she believed the parties were not bound by any agreements until they filed an acceptance of the recommended resolution.

{8}     The WCJ found that "the parties attend[ed] a mediation conference. During the mediation conference offers were exchanged and ultimately the parties reached a *tentative* agreement." (Emphasis added.) Accordingly, the WCJ determined that the settlement agreement was not binding and issued a compensation order, which was subsequently amended to correct a mistake in the benefit calculation. The amended compensation order found that Worker was entitled to SI benefits at 20 percent for each elbow and 30 percent for each wrist. Worker appeals from the denial of his motion for summary judgement and the amended compensation order.

**DISCUSSION**

{9}     The issue before this Court is whether a binding agreement was reached between the Worker and Employer at the mandatory mediation conference resolving Worker's SI benefits claim. Worker asserts that the oral agreement reached at mediation was a binding contract and that Employer should be bound to the terms of the settlement agreement despite its subsequent attempt to reject the agreement memorialized in the Mediator's recommended resolution. Employer contends that although it made a "final offer" at mediation that Worker accepted, the agreement was tentative because both parties had thirty days to review and reject the recommended resolution and both were required to accept the recommended resolution before the agreement would be enforceable.

**I.      Standard of Review**

{10}     Both parties make various arguments about whether the WCJ correctly denied Worker's motion for summary judgment to enforce the settlement agreement reached at the mandatory mediation. The issue that was the subject of the motion for summary

judgment—i.e., whether a binding agreement was reached regarding Worker's SI benefits during the mediation—also was a contested issue determined at the trial on the merits. As such, we review the WCJ's resolution of this issue after trial on the merits, not the WCJ's denial of summary judgment. *See Green v. Gen. Accident Ins. Co. of Am.*, 1987-NMSC-111, ¶ 19, 106 N.M. 523, 746 P.2d 152 (holding "a denial of a motion for summary judgment is not reviewable after final judgment on the merits" and observing that "[i]f a summary judgment motion is improperly denied, the error is not reversible for the result becomes merged in the subsequent trial").

**{11}** We review the WCJ's factual findings under a whole record standard of review, *Moya v. City of Albuquerque*, 2008-NMSC-004, ¶ 6, 143 N.M. 258, 175 P.3d 926, giving deference to the WCJ as fact-finder where findings are supported by substantial evidence. *See DeWitt v. Rent-A-Ctr., Inc.*, 2009-NMSC-032, ¶ 12, 146 N.M. 453, 212 P.3d 341. The WCJ's application of the law to the facts is reviewed de novo. *Ruiz v. Los Lunas Pub. Sch.*, 2013-NMCA-085, ¶ 5, 308 P.3d 983. We also apply a de novo standard of review to the extent that our analysis involves the interpretation of workers' compensation statutes or regulations. *See Ramirez v. IBP Prepared Foods*, 2001-NMCA-036, ¶ 10, 130 N.M. 559, 28 P.3d 1100 (stating that interpretation of a workers' compensation statute is a question of law to be reviewed de novo), *superseded by statute on other grounds as stated in Baca v. Los Lunas Cmty. Programs*, 2011-NMCA-008, 149 N.M. 198, 246 P.3d 1070; *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 24, 147 N.M. 583, 227 P.3d 73.

## II. The WCJ's Determination That the Parties' Agreement Was Tentative Was In Error

**{12}** Worker challenges the WCJ's finding that the settlement agreement was "tentative." We turn to principles of contract law in reviewing the WCJ's determination that there was no binding settlement agreement. *See Herrera v. Herrera*, 1999-NMCA-034, ¶ 9, 126 N.M. 705, 974 P.2d 675 ("All settlement agreements are contracts and therefore are subject to contract law[.]"); *see also Sitterly v. Matthews*, 2000-NMCA-037, ¶ 15, 129 N.M. 134, 2 P.3d 871 (recognizing that a settlement agreement is interpreted in the same way as any other contract).

**{13}** "The existence of a contract between parties is generally a question of law." *See Garcia v. Middle Rio Grande Conservancy Dist.*, 1983-NMCA-047, ¶ 22, 99 N.M. 802, 664 P.2d 1000, *overruled on other grounds by Montoya v AKAL Sec., Inc.*, 1992-NMSC-056, 114 N.M. 354, 838 P.2d 971. We review questions of law de novo. *See Rivera v. Am. Gen. Fin Servs., Inc.*, 2011-NMSC-033, ¶ 27, 150 N.M. 398, 259 P.3d 803 ("Contract interpretation is a matter of law."). "Ordinarily, to be legally enforceable, a contract must be factually supported by an offer, an acceptance, consideration, and mutual assent." *See Garcia v. Middle Rio Grande Conservancy Dist.*, 1996-NMSC-029, ¶ 9, 121 N.M. 728, 918 P.2d 7 (internal quotation marks and citation omitted).

**{14}** The parties do not dispute that Employer made a "final offer" at the mediation and that Worker accepted this offer, at which time the mediation concluded. Rather,

Employer disputes that its offer at the parties' mediation conference constituted an enforceable contract once accepted.[2] Thus, the narrow question before us is whether, by their objective manifestations at the mediation, the parties intended to enter a binding contract. *See Pope v. Gap, Inc.*, 1998-NMCA-103, ¶ 13, 125 N.M. 376, 961 P.2d 1283 (explaining "what is operative is the objective manifestation of mutual assent by the parties, not their secret intentions"); *see also Rojo v. Loeper Landscaping, Inc.*, 1988-NMSC-065, ¶ 5, 107 N.M. 407, 759 P.2d 194 (noting that there is nothing in the Act that requires an agreement be in writing and so "an oral contract may be as binding as a written one").

**{15}** First, there was no evidence that the claims adjuster's objective manifestations projected her otherwise private intention to make only a tentative settlement agreement at the mediation conference. The claims adjuster had no recollection whatsoever of the mediation with Worker and instead offered her personal beliefs about the nature of the mediation process. Employer argues that the claims adjuster understood "the mediation process to include a right to reject" the recommended resolution, but Employer presented no evidence that it communicated, to either the Worker, his attorney, or the Mediator, that its final offer was a tentative offer or subject to any unstated contingency. Although counsel maintains that the Employer understood the agreement to be tentative, the adjuster did not testify that she conveyed such an understanding to Worker. And, as indicated, the Employer's final offer contained no conditional language that might raise questions as to its legitimacy as a true settlement. In all, Employer points to no evidence to suggest that Worker's acceptance of its offer was anything other than a "manifestation of unconditional agreement to all of the terms of the offer and an intention to be bound thereby." *Silva v. Noble*, 1973-NMSC-106, ¶ 6, 85 N.M. 677, 515 P.2d 1281 (internal quotation marks and citation omitted).

**{16}** Second, the Mediator's recommended resolution acknowledged and memorialized that an agreement had been reached by the parties at the mediation: "[a]fter full discussion and negotiations at the mediation conference, the parties agreed, that Worker is entitled" to specific SI benefits. It then set forth the Mediator's recommendation on some remaining matters, including that Worker was entitled to reasonable attorney fees subject to approval of the WCJ, and that medical benefits remained open with both parties reserving and retaining their rights and defenses under Section 52-1-49.

---

[2]Employer spends significant time on its argument that the recommended resolution was not binding on the parties because Employer timely rejected the recommendation under Section 52-5-5 and its implementing regulations. Worker, however, agrees with Employer that the recommended resolution is not binding. Worker instead advances a different argument—that a separate binding agreement was reached at the mediation and that Employer was not free to renege on this separate agreement. Employer spends little time directly addressing this argument and instead seems to suggest that Section 52-5-5, and its implementing regulations, somehow preclude the parties from entering into a binding settlement agreement separate from the recommended resolution. To the extent Employer advances this argument, it is not well-developed and we decline to address it. See Elane Photography, LLC v. Willock, 2013-NMSC-040, ¶ 70, 309 P.3d 52 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)).

**{17}** Third, Employer had the option of ensuring the mediator's understanding of or the mediator's language used in memorializing the purportedly tentative nature of the parties' agreement resolving Worker's claims. *See* NMAC 11.4.4.10(F) (10/1/14) (setting out process to amend recommended resolution). Indeed, in stating its reasons for the rejection, the Employer indicated only that the recommended resolution did not provide substantial justice to the parties, with no mention of its present claims that an agreement was not reached or was conditional or otherwise tentative.

**{18}** In sum, Employer points to no objective evidence from which Worker could have known that the offer was intended to be conditional. *See Pope*, 1998-NMCA-103, ¶ 13 ("Mutual assent is based on objective evidence, not the private, undisclosed thoughts of the parties."). Accordingly, we conclude that the mutual assent necessary to form a binding contract was present, *see id.,* and that the WCJ's contrary determination that the agreement was "tentative" is not supported by substantial evidence. Because the parties formed a valid and enforceable oral contract, the WCJ's findings and conclusions to the contrary are in error.

### III.    New Mexico's Public Policy Favors Settlement Agreements

**{19}** Finally, we address Employer's argument that in holding that parties are bound by their offers at mediation, the mediation effectively becomes a mechanism to force settlement prematurely and goes against the underlying purpose of the Act. Employer suggests in its answer brief that if employers do not settle at mediation, they risk being bound by the mediator's subsequent recommended resolution unless the employers can prove the details of "what happened" at the mediation or litigate "the words used" in the recommended resolution. We are unpersuaded by this argument. Although the parties are required to come to mediation prepared to discuss settlement, we are unable to find any authority within the Act that mandates that the parties settle claims at the mediation stage and Employer points us to none. "Where a party cites no authority to support an argument, we may assume no such authority exists." *Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482.

**{20}** We also disagree with Employer's characterization of the mediation process as ineffective or unfair because it occurs early after the case is filed. First, we note that the parties are required to exchange all of the information that they have about a claim prior to the mediation. *See* 11.4.4.10(B)(3) NMAC (10/1/14) (stating that "[t]he purpose of mandatory production is to ensure that the parties and the mediator have access to all pertinent information regarding the issues disputed in the complaint"). While each party is required to attend the mediation conference prepared to discuss settlement, they are by no means obligated to settle. NMAC 11.4.4.10(C)(7)(c) (10/1/14). One of the express purposes of a mediation conference is "to bring the parties together and . . . *attempt* to settle disputed issues." NMCA 11.4.4.10(C)(6)(a) (10/1/14) (emphasis added). Employer was certainly free to discuss various settlement options during the mediation, decline to reach agreement, wait for the Mediator's recommended resolution, and then decide whether to accept or reject the proposed resolution on all issues. That is not what happened in this case. Rather, Employer chose to tender a "final offer," which

Worker accepted in return for resolving his claims, and, as stated, the Employer is bound by the agreement.

**{21}** To allow Employer to rescind the agreement under these circumstances would undermine the long-standing public policy of this state favoring the settlement of disputed claims. *See Navajo Tribe of Indians v. Hanosh Chevrolet-Buick, Inc.*, 1988-NMSC-010, ¶ 3, 106 N.M. 705, 749 P.2d 90 ("[I]t is the policy of the law and the State of New Mexico to favor settlement agreements."); *Ratzlaff v. Seven Bar Flying Serv., Inc.*, 1982-NMCA-071, ¶ 21, 98 N.M. 159, 646 P.2d 586 ("[W]e must . . . bear in mind that the policy of our law is to favor amicable settlement of claims without litigation when the agreements are fairly secured, are without fraud, misrepresentation, or overreaching, and when they are supported by consideration."); *Esquibel v. Brown Constr. Co.*, 1973-NMCA-111, ¶ 17, 85 N.M. 487, 513 P.2d 1269 ("It is the policy of the law to favor compromise and settlement.").

**CONCLUSION**

**{22}** For the foregoing reasons, we reverse and remand with instructions to vacate the amended compensation order and enter a second amended compensation order consistent with the settlement agreement entered into by the parties at mediation.

**{23}   IT IS SO ORDERED.**

**M. MONICA ZAMORA, Chief Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**